Josefa **HERNANDEZ**, Plaintiff,

v.

**U. S. SECRETARY OF HEALTH, EDUCATION AND WELFARE**, Defendant.

Civ. No. 769–68.

United States District Court
D. Puerto Rico.
Dec. 16, 1969.

Manuel Reyes Serrano, Bayamon, P. R., for plaintiff.

Candita R. Orlandi, Asst. U. S. Atty., San Juan, P. R., for defendant.

## ORDER AND MEMORANDUM OPINION

FERNANDEZ-BADILLO, District Judge.

Claimant Josefa Hernández seeks judicial review in this Court pursuant to 42 U.S.C. § 405(g) of the final decision reached by defendant disallowing her claim for old-age insurance benefits on the ground that she failed to establish the required eleven quarters of coverage for fully insured status under the Social Security Act.

The basic facts underlying this case are not in conflict. Plaintiff filed a prior written application for old-age insurance benefits on September 25, 1963 based on self-employment income derived during the years 1960, 1961 and 1962 from her labor as a seamstress. This 1963 application was denied and no further administrative action was taken by her. The current application for old-age insurance benefits is based on net earnings from self-employment[1] as a seamstress during the years 1963, 1964, 1965 and 1966. It is undisputed that she needs eleven quarters of coverage to be a fully insured individual entitled to old age insurance benefits. A "quarter of coverage" requires that an individual have been credited with $100 or more of self-employment income in each quarter of the year. 42 U.S.C. § 413(a) (2). In order to be credited with self-employment income an individual must have received net earnings from a trade or business of at least $400.00 in the taxable year. Kelley v. Celebrezze, 243 F.Supp. 18 (D.N.J., 1965).

The sole issue between the parties is based upon the existence of the claimed net earnings.[2] The Hearing Examiner has concluded as follows:

"Because of the claimant's advanced years and her lack of understanding record keeping, there must necessarily be some doubt about the accuracy of the amount shown as cash received.

1. Under 42 U.S.C. § 411(a) the term "net earnings from self-employment" is defined as "the gross income, as computed under chapter 1 of Title 26, derived by an individual from any trade or business carried on by such individual, less the deductions allowed under such chapter which are attributable to such trade or business, plus his distributive share (whether or not distributed) of the ordinary net income or loss, as computed under Section 183 of Title 26, from any trade or business carried on by a partnership of which he is a member * * *" Section 411, subsection (b), in its pertinent part provides that "self employment income means the net earnings from self-employment derived by an individual during any taxable year beginning after 1950."

2. The decision of the Hearing Examiner indicates that "if she did in fact have net earnings in the amount she claims she had from 1963 through 1966, she would have acquired 11 quarters of coverage and would be fully insured." (Tr. p. 7) Further on in his decision the Examiner plainly sets forth the issue saying: "It is not disputed that the claimant is in fact a seamstress, that she has a sewing machine, and that she does do sewing for others. The only question is how much she made during the years 1963 through 1966." (Tr. p. 8)

In the absence of better corroborating evidence than she was able to submit or the Administration's investigator was able to find, there is insufficient proof of actual receipt of these amounts. For the reasons stated, the Examiner is constrained to find that the claimant has not acquired any quarters of coverage for Social Security purposes and that her claim must be denied."

Plaintiff filed income tax returns as a self-employed person for the years 1963, 1964, 1965 and 1966 and paid self-employment tax on the amounts reported therein. The returns for these years disclose the following incomes obtained from her seamstress trade:

| Year | Total Income | Net |
|---|---|---|
| 1963 (Tr. p. 80) | $725.00 | $725.00 |
| 1964 (Tr. p. 86) | 825.00 | 825.00 |
| 1965 (Tr. p. 92) | 700.00 | 700.00 |
| 1966 (Tr. p. 103) | 600.00 | ——— |

She reported no business expenses for any of these years, consequently the figures for total and net incomes were exactly the same. Claimant testified that a Social Security employee instructed her to write down how much money was received from the various jobs and her expenses "on each one of these cases." (Tr. p. 21) The expenses, listed in a notebook for the years in issue, were not business but rather personal expenses such as church donations, food, medicines and clothing. The Hearing Examiner found that her business expenses were minimal since her sewing machine was paid for and "rental expenses attributable to the business could not possibly amount to more than $100 a year." However, the Examiner determined that her inadequate records, unsupported by better corroborating evidence, were insufficient proof of actual receipt of the amounts claimed as net earnings.

Other documentary evidence offered by plaintiff consists of a school notebook containing entries of her clients from 1963 through 1966 with their names and addresses and the amounts paid by them each year for her sewing services (Ex. 2; Tr. 46-79). She explained that these entries were made in loose-leaf papers which were thrown away when transferred to the notebook (Tr. p. 135) and that one of the reasons for preparing the book was "to see if I could get the signatures of all these people but, as it happened, a lot of times I would go over and visit the clients and they would not be there". (Tr. p. 29) Not one of the thirty clients included by her in the 1966 listing made in the notebook (Exh. 4) signed their names under the amounts set forth therein as collected from them for services during that period. Attempts made by representatives of the Social Security Administration to locate as many clients as possible revealed that many of these had either gone to the United States or moved elsewhere.[3] Interviews with those clients who could be contacted established that plaintiff sewed for them but none of them could give any information with respect to the amount of money paid to plaintiff for her work.

3. See: Exhibit 2. Also, the Report of Contact dated September 11, 1967, where the interviewer states at page 141 of the transcript:

"* * * The fact that most of the clients have moved from the area, some before the dates shown on the notebook submitted as proof of payments made to her, makes us conclude that the notebook is not a reliable record and that figures shown there have been exaggerated. Our opinion is that the applicant has failed to produce reliable evidence to establish the figures shown in the returns and that through circumstantial evidence it has not been possible to establish her correct income from the self-employment."

(Tr. pp. 37, 38, 109, 117–118, 136–137, 144, 146) Ernesta Casilla who appears as one of the clients signing the notebook indicated in a written statement that she did not recall having signed a notebook for Josefa Hernández. (Tr. p. 144). She stated that during a period of approximately two years plaintiff "might have made fifteen dresses * * * for $1.25 or $2.00 per piece." Plaintiff's notes show only that she collected $28.00 from this client in 1963 (Tr. p. 48).

Rev. José Hernández, claimant's pastor, appeared as a witness on her behalf and testified that she had a good reputation in the community but he did not know anything about her sewing business (Tr. p. 33). Although he recognized the names of several clients listed in the notebook who were members of his church he couldn't affirm whether any of them had work done by claimant (Tr. p. 36). Andrea Diaz, the other witness for plaintiff, declared at the hearing that the signature appearing under her name in the notebook was her own but stated she couldn't specify as to the amount of money actually paid.

A statement obtained from Mario Roldán Cass, plaintiff's landlord, as part of the field investigation conducted by the Social Security Administration revealed that she pays him $30.00 of monthly rental. He did not know if she sewed "for business or not" and could not say "what her sources of income are" (Tr. p. 176). In other statement secured in 1964 from Ana Luisa Fernández, claimant's niece, as part of the investigation surrounding the 1963 application [4] she certified having paid her aunt about $100.00 for her services the year before, meaning in 1963. This person's name does not appear among those listed by claimant (as client for 1963) or any other year in the notebook offered by her in evidence as proof of earnings.

A Request for Reconsideration of the denial of her claim was signed by Josefa Hernández on February 25, 1967 and it was there indicated that the following additional evidence would be submitted: "a dozen certifications from some of the persons for whom I did sewing in 1960, 1961, 1962, 1963, 1964 and 1965. Those were my steadiest customers." Two days later claimant gave a statement to the Social Security Administration explaining that this was an error made by the lawyer who filled out the form for her and adding: "I meant that I have already submitted certifications from the customers." Claimant was obviously referring to twelve statements addressed "To Whom It May Concern" whereby several clients certified as to exact amounts paid to Josefa Hernández for her services as a seamstress during the years 1960, 1961 and 1962. These years as noted before are those pertaining to the prior 1963 application. There are no certifications of payment for the years 1963 through 1966 covered by the current application.

▬▬▬ (1) The Court finds that the test of substantiality of the evidence requires it to uphold the Secretary's determination and the ensuing denial of benefits. The role of judicial review is restricted by the stringent limitation of the substantial evidence rule. Reyes Robles v. Finch (Gardner) 409 F.2d 84 (1st. Cir. 1969); Kelley v. Celebrezze, 243 F. Supp. 18 (D.N.J., 1968); Salgado v. Gardner, 265 F.Supp. 894, 895 (D.P.R., 1967). The Court in reviewing a Social Security claim does not weigh the evidence to determine whether it would have granted such claim but to determine whether there is substantial evidence in the record submitted to support the findings and conclusions reached by defendant. Collins v. Secretary of Health, Edu-

---

4. The statement of Ana Luisa Fernández is a part of Exhibit 21 on record which relates only to the 1963 application of plaintiff claiming old-age insurance benefits based on net earnings obtained in 1960, 1961 and 1962. Said application as mentioned earlier was denied and is final and binding. This statement is now considered only because the year 1963, during which Ana Luisa Fernández allegedly paid her claimant aunt $100.00 is one of the years in issue concerning the pending application for old-age benefits.

cation and Welfare, 286 F.Supp. 81 (W. D.Ark., 1968). In Cardwell v. Celebrezze, 241 F.Supp. 328 at 330 (E.D. Tenn., 1965) in which disallowance of old age insurance benefits was based on the ground that no employer-employee relationship existed between claimant and her brother-in-law, the court once more recognized the limitation placed upon its discretion by the substantial evidence standard and affirmed "even though its own feeling [was] that the intent of the Act and perhaps its letter were tortured by the decision."

■■ (2) An old-age insurance benefits claimant has the burden, like any other claimant seeking the benefit of the statute, of establishing his claim. Collins v. Secretary of Health, Education and Welfare, *supra*; Johnson v. Gardner, 401 F.2d 518 (8th Cir., 1968). In our case the burden falls on plaintiff to prove the amount of income or net earnings upon which she founds her entitlement to benefits. She must produce evidence of probative, not speculative, value to prove such earnings.

(3) A careful scrutiny of the record revealed the underlying facts of this case as earlier discussed. It is unnecessary to pass once more upon the evidence contained therein. Suffice it to say that claimant offered her testimony and documentary evidence in the form of income tax returns and a notebook in which she recorded her business transactions. Said notebook was in fact a compilation of loose-leaf papers where she annotated her dealings. These loose-leaf papers were not offered into evidence since reportedly they were disposed of. She introduced no proof, by affidavit or otherwise, with respect to amounts paid to her which could corroborate the figures set forth in the notebook. As a matter of fact, the weight of the evidence on record is to the effect that clients could not testify as to amounts paid on any occasion.

■ In a recent opinion this Court stated that "the Social Security Administration is not only privileged, but, in questionable cases, it is obligated to investigate behind the form of self-employment tax returns which an individual has filed. *Furthermore the Regulations provide that claimant shall submit proper and complete evidence in order to substantiate the amount of self-employment income reported, which records are subject to such verification as is deemed necessary to insure their accuracy."* (emphasis supplied) Picón v. Gardner, Civil No. 405–67, Memorandum of Opinion dated January 26, 1968. It is the actual receipt of self-employment income, not the reporting or payment of taxes thereon, which is the crucial test for establishing a realistic claim. Bender v. Celebrezze, 332 F.2d 113 (7th Cir., 1964).

■ Corroborating evidence plays an important role in achieving this. The Court understands that the Administration by way of the investigation conducted and the Hearing Examiner through the testimonial evidence adduced from the plaintiff and other witnesses discharged their duty of eliciting all the evidence available which would result in a fair determination of plaintiff's claim. However, efforts to verify and substantiate the records presented by claimant were essentially fruitless. Claimant in turn has failed to introduce sufficient evidence of probative value to support the amounts claimed by her. The task of proving actual receipt of income remained unfulfilled. Though her good faith is not questioned plaintiff did not come forward to meet the burden upon her. An examination of the evidence supplied by her reveals this.

The Court is of the view that there is substantial evidence on the record to support the Secretary's determination which resulted in denial of old-age insurance benefits. Therefore, it is ordered, adjudged and decreed that the decision of the Secretary of Health, Education and Welfare be affirmed and the complaint is hereby dismissed.