Manuel SALAZAR, et al., Plaintiffs,

v.

Robert BROWN, Jr., et al., Defendants.

No. 1:87cv961.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 30, 1996.

---

Deborah L. McNabb, Gary N. Gershon, Michigan Migrant Legal Assistance Project, Inc., Grand Rapids, MI, John M. Lichtenberg, James Gavin O'Connor, Dickinson, Wright, Moon, Van Dusen, et al., Grand Rapids, MI, for plaintiffs.

Richard M. Van Orden, Gockerman, Wilson, Saylor & Hesslin, P.C., Grand Rapids, MI, for defendants.

## *OPINION*

SCOVILLE, United States Magistrate Judge.

This is the final chapter in a complicated and protracted class action lawsuit brought by agricultural workers against their former employer. All claims, save one, have been disposed of by order of dismissal, summary judgment, trial, or stipulation of the parties. The only remaining claim is set forth in count III of the second amended complaint, in which plaintiffs seek a declaration that defendant Brown & Brown Farms violated the Federal Insurance Contributions Act (FICA) by failing to withhold, report, and pay FICA taxes. (Sec.Am.Comp., Prayer for Relief, ¶ I, docket # 84). Presently pending before the court is defendant's motion for summary judgment on this count. The matter has been fully briefed and argued by the parties. The parties have consented to the entry of final judgment by a magistrate judge. 28 U.S.C. § 636(c). For the reasons set forth below, defendants' motion will be granted and count III of the second amended complaint will be dismissed.

As the Sixth Circuit has noted, the federal courts have entered a "new era" in summary judgment practice. *Cox v. Kentucky Dep't of Transportation*, 53 F.3d 146, 150 (6th Cir. 1995); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478–81 (6th Cir.1989). Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Sims v. Memphis Pro-*

*cessors, Inc.*, 926 F.2d 524, 526 (6th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12). Summary judgment is particularly appropriate where the material facts are not disputed and the case turns upon an issue of law, such as the construction of a statute. *Miller v. State Farm Mut. Auto Ins. Co.*, 87 F.3d 822, 824 (6th Cir.1996).

## *Facts and Previous Proceedings*

The factual record now before the court is extensive. The facts relevant to the pending motion, however, are straightforward and not disputed by any party. Those facts are as follows.

The named plaintiffs were engaged as agricultural workers of Brown & Brown Farms during 1985, 1986, or 1987. Defendant Brown & Brown Farms treated all field workers during those years as independent contractors for purposes of the federal tax laws. In that connection, each field worker signed a one-page contract, written in both English and Spanish, acknowledging that the worker "is an independent contractor and not an employee of Brown & Brown Farms." (*See* Sec.Am.Comp., Ex. 1, ¶ 6, docket # 84). In the same agreement, the worker "agreed to comply with any applicable state & federal laws in reporting income of the independent contractor." (*Id.*). It is undisputed that, during the years in question, Brown & Brown did in fact treat field workers as independent contractors. Consequently, the workers were given 1099 forms and not W–2 forms, no federal taxes were withheld, and the employer did not withhold or pay FICA taxes.

Despite their execution of such agreements, plaintiffs filed suit in this court in 1987 seeking to compel compliance with the provisions of the Federal Insurance Contributions Act. In count III of their original complaint (docket # 1), plaintiffs alleged that they were employees, not independent contractors, and that defendant's failure to withhold, report, and pay FICA taxes violated the provisions of 26 U.S.C. § 3102(a). The original complaint requested a declaration that defendant violated FICA by failing to withhold, report, and pay taxes (Prayer For Relief, ¶ M) and an injunction directing defendant to file appropriate tax returns and to remit FICA taxes due on plaintiffs' earnings. (*Id.*, at ¶ N). Defendant moved to dismiss count III, on the sole ground that the relief requested was barred by the provisions of the Tax Injunction Act, 26 U.S.C. § 7421. In an oral opinion, District Judge Douglas W. Hillman denied the motion to dismiss, finding that the Tax Injunction Act only bars suits seeking to restrain the assessment or collection of taxes. Judge Hillman found that suits, such as the present one, that seek to promote taxation do not fall within the purview of the Tax Injunction Act. (*See* Transcript of Oral Opinion, docket # 36, at 12–13). The court subsequently entered an order (docket # 32) denying the motion to dismiss the FICA claim.

Plaintiffs subsequently filed a first amended complaint, reiterating the FICA claim (docket # 11). In response, defendant again moved for dismissal, raising the same issue decided by Judge Hillman as well as the question whether an employee has a private right of action under FICA. (Motion, docket # 63). Because the motion relied on matters outside the pleadings, the court elected to treat it as a motion for summary judgment pursuant to FED.R.CIV.P. 56, and so notified the parties. *See* FED.R.CIV.P. 12(b)(6). At a motion hearing, plaintiffs voluntarily withdrew all claims for injunctive relief in count III. (See Order, docket # 87). Plaintiffs filed a second amended complaint, repeating the FICA claim but deleting prayer for relief N, which had asked for an injunction ordering the payment of FICA taxes (docket # 84). Consequently, as amended, count III now seeks only a declaratory judgment concerning defendant's alleged violation of its duty to pay FICA taxes for the years in question. Defendant renewed its motion, and the matter is before the court for decision.

### Discussion

Defendant's motion for summary judgment presents two essential arguments. First, defendant continues to assert that a grant of relief on count III would violate the Tax Injunction Act. As Judge Hillman has already decided this issue, I will not revisit it. Defendant has presented no new evidence or argument that would indicate that Judge Hillman's conclusion was incorrect. Defendant's arguments based upon the Tax Injunction Act, 28 U.S.C. § 7421, will therefore be overruled. Defendant's second argument is that an alleged employee has no private right of action under FICA against an employer arising from an employer's failure to withhold and remit FICA taxes. For the reasons set forth below, I find this argument to be meritorious.

### A. Statutory Background

The Federal Insurance Contributions Act (FICA) is but one part of the immensely complicated and interrelated system of statutes and regulations that make up the federal social welfare program. The Social Security Act, 42 U.S.C. §§ 401, *et seq.*, establishes a federal insurance scheme for the benefit of the aged, blind and disabled and their dependents. FICA is one of the taxing statutes designed to fund the program set up by the Social Security Act. Pursuant to the requirements of FICA, employees and their employers are liable for certain employment taxes to support the Social Security and the Medicare systems. For the year 1985, FICA imposed a tax at the rate of 7.05 percent upon the eligible wages of all employees. The rate for the years 1986 and 1987 was 7.15 percent. 26 U.S.C. § 3101(a), (b). Federal law requires the employer to collect from each employee the FICA tax on wages by withholding the taxes from the employee's paycheck and periodically remitting them to the Internal Revenue Service. *See* 26 C.F.R. § 31.3102–1(a). Federal law also imposes upon the employer itself a tax, generally in

an amount equal to the employee's tax. 26 U.S.C. § 3111(a). This tax is specifically denominated as an "excise tax" in the Act. *Id.* Consequently, an employer is required to withhold and remit the employee tax and to remit an equal amount as an employer excise tax on the covered wages of all persons who qualify as "employees," as that term is defined by FICA. 26 U.S.C. § 3121(d).

Those workers who are self-employed are covered by different provisions. Self-employment income is subject to the self-employment tax. 26 U.S.C. §§ 1401, 1402(b). For the year 1985, the net rate was 11.80 percent. For 1986 and 1987, the net rate was 12.30 percent. 26 U.S.C. § 1401. The self-employed are responsible for remitting their own taxes to the IRS.

The obligations imposed by FICA are administered by the Internal Revenue Service and are subject to numerous regulations, revenue rulings, interpretive rulings, and other administrative pronouncements too extensive to summarize here. In general, however, employer returns are subject to examination and audit by the IRS with regard to compliance with FICA. If the IRS determines that the employer has underpaid FICA liability, the IRS will issue a tax assessment. 26 U.S.C. §§ 6201, 6205, 6211. If the employer does not agree with the assessment, the employer must nevertheless pay the assessed FICA tax and then litigate the matter in the U.S. District Court or the Court of Claims. 28 U.S.C. § 1346(a).

■ The courts have long recognized that a worker's entitlement to social security benefits does not depend upon the actual payment of FICA taxes by the employer. FICA, by its terms, is a taxing statute, designed to fund the government's overall obligations in the areas of old-age, disability, survivors, and Medicare insurance. *See Whitaker v. United States,* 194 F.Supp. 505, 507 (D.Mass.), *aff'd,* 295 F.2d 817 (1st Cir. 1961). The worker's entitlement to social security benefits is measured by the worker's actual receipt of covered wages, *see* 42 U.S.C. § 413(a)(2)(A)(ii), not on the reporting of income or the payment of FICA taxes. *See Slodov v. United States,* 436 U.S. 238, 243, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978);

*Bender v. Celebrezze,* 332 F.2d 113, 116 (7th Cir.1964); *Hernandez v. Secretary,* 307 F.Supp. 338, 342 (D.P.R.1969).

The Social Security Act creates an express administrative remedy for employees who contend that earnings have not been credited properly to their record for social security purposes. An employee seeking to establish that he has earned wages that should be credited to his account for social security purposes must proceed administratively before the Secretary of Health and Human Services to correct the employee's earnings record within three years, three months and fifteen days of the year in question. 42 U.S.C. § 405(c)(4), (5). The agency will investigate the requested correction and make any necessary changes. 20 C.F.R. §§ 404.802–.823. If the worker is not satisfied with the Secretary's resolution of this issue, judicial review is available in the federal district court. 42 U.S.C. § 405(c)(8). *See, e.g., Jabbar v. Secretary of Health & Human Servs.,* 855 F.2d 295 (6th Cir.1988) (reversing the Secretary's determination and ordering correction of earnings record). The employer is neither a necessary nor a proper party in such proceedings, although the employer's records may be subpoenaed to provide evidence on the issue. 42 U.S.C. § 405(d).

■ Likewise, the federal case reports are filled with decisions in which the Internal Revenue Service has pursued employers on the theory that they have underpaid FICA taxes by improperly treating employees as if they were independent contractors. *See, e.g., Springfield v. United States,* 88 F.3d 750, 753 (9th Cir.1996); *Boles Trucking, Inc. v. United States,* 77 F.3d 236 (8th Cir.1996); *Hospital Resource Personnel v. United States,* 68 F.3d 421 (11th Cir.1995); *Lanigan Storage & Van Co. v. United States,* 389 F.2d 337 (6th Cir.1968); *Halfhill v. United States,* 927 F.Supp. 171 (W.D.Pa.1996); *J & J Cab Service, Inc. v. United States,* No. 1:93cv 234, 1995 WL 214326, at *3 (W.D.N.C. Jan. 3, 1995); *Apollo Drywall, Inc. v. United States,* No. 5:91cv 16, 1993 WL 304392 (W.D.Mich. June 3, 1993). Furthermore, the statute imposes upon responsible corporate officers and agents personal liability, in the form of a 100% penalty, for wilful failure to collect and

remit FICA taxes. 26 U.S.C. § 6672. Upon assessment of such penalties, the burden is on the corporate officer to show he was not responsible for the failure to pay FICA taxes. *See Cline v. United States,* 997 F.2d 191, 194 (6th Cir.1993). The IRS has been more than effective in pursuing its statutory remedies against employers and corporate officers under FICA. In fact, in 1978, Congress passed a specific statute creating a "safe harbor" for employers with regard to this question, in response to what was perceived as an overly zealous pursuit and assessment of taxes and penalties by the IRS against employers who, in good faith, had misclassified their employees as independent contractors. *See Boles,* 77 F.3d at 239. Again, the employee is neither a necessary nor a proper party in such government litigation. Rather, the Internal Revenue Service makes its own investigation and assessments pursuant to the clearly defined statutory scheme established by Congress for the enforcement of FICA liability.

### B. Implied Right of Action

■ The Federal Insurance Contributions Act contains no express right of action for employees to sue their employer for declaratory or any other type of relief. Plaintiffs nevertheless argue that a private cause of action should be implied. "Congressional intent is the touchstone of whether private enforcement of a statute is permitted." *Cline v. Rogers,* 87 F.3d 176, 182 (6th Cir. 1996). "[U]nless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988) (quoting *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)).

As should be obvious from the foregoing analysis of FICA and the Social Security Act, neither the language nor the structure of either act even remotely evinces an intent to create a private cause of action as plaintiffs suggest. To the contrary, Congress has established a comprehensive administrative system to handle the very claims that plaintiffs seek, improperly, to bring in court. The Social Security Act creates an express administrative mechanism to investigate and decide issues concerning a worker's earnings record and his receipt of covered wages. 42 U.S.C. § 405(c)(4), (5). This mechanism is superintended by the Social Security Administration, the largest adjudicatory body on the face of the earth, and provides the safeguards of an adversary hearing before a professional Administrative Law Judge and eventual judicial review. Likewise, the enforcement of FICA tax obligations is entrusted to the IRS, which has administrative and judicial remedies directly against the employer and corporate officers. These statutes do not admit of a third approach, under which employees and employers would litigate benefit and taxation issues outside the statutory structure and without the presence of the very agencies created by Congress to administer this complicated system.

■ In light of the comprehensive enforcement systems expressly created by Congress for both Social Security and FICA obligations, implication of a private right of action is foreclosed by the doctrine of *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). The Court in *Sea Clammers* reviewed the question whether a private right of action should be implied under the Federal Water Pollution Control Act (FWPCA). The Court analyzed the remedial provisions of FWPCA, noting its "unusually elaborate enforcement provisions." 435 U.S. at 13, 98 S.Ct. at 913. In light of the statute's creation of a comprehensive enforcement mechanism, the courts should not invent remedies of their own:

In view of these elaborate enforcement provisions it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under MPRSA and FWPCA. As we stated in *Transamerica Mortgage Advisors [v. Lewis],* "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." 444 U.S. [11],

19 [100 S.Ct. 242, 247, 62 L.Ed.2d 146] [ (1979) ]. *See also Touche Ross & Co. v. Redington,* [442 U.S. 560], 571–574 [99 S.Ct. 2479, 2486–2489, 61 L.Ed.2d 82] [ (1979) ]. In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.

453 U.S. at 14–15, 101 S.Ct. at 2623–24. Under the *Sea Clammers* doctrine, the federal courts should presume congressional intent to preclude private remedies where Congress has itself created adequate statutory remedies. *Chairez v. INS,* 790 F.2d 544, 547 (6th Cir.1986); *see Meghrig v. KFC Western, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1251, 1256, 134 L.Ed.2d 121 (1996) (because Resource Conservation and Recovery Act created a comprehensive statutory remedial scheme that did not include any private cause of action to recover prior response costs, no such cause of action could be implied); *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (ERISA provided a comprehensive statutory scheme, precluding implication of a private cause of action for extra contractual or punitive damages); *Cline v. Rogers,* 87 F.3d 176, 182 (6th Cir.1996) (comprehensive administrative scheme evidence of congressional intent not to create implied cause of action).

Applying the *Sea Clammers* doctrine to the present case, this court determines that plaintiffs have no private right of action under either FICA or the Social Security Act to sue their former employer for declaratory relief concerning employee status. The statutes themselves create no express judicial cause of action, but instead create a comprehensive administrative process designed to resolve such questions efficiently and without the necessity of litigation between employer and employee. The language and structure of the Acts, therefore, strongly support a conclusion that "Congress provided precisely the remedies it considered appropriate." *Sea Clammers,* 453 U.S. at 15, 101 S.Ct. at 2624.

In the first half-century of the Social Security system, no court thought it necessary to imply private rights of action, under either the Social Security Act or FICA, to address employer/employee disputes of the type presented herein. In recent years, however, plaintiffs have sought such relief, with mixed results in the lower courts. Some courts have ordered the payment of FICA taxes by employers with no discussion of the issue whatsoever, apparently assuming the presence of a private right of action without analysis. *See, e.g., Campbell v. Miller,* 836 F.Supp. 827, 832 (M.D.Fla.1993); *Colunga v. Young,* 722 F.Supp. 1479, 1487 (W.D.Mich. 1989), *aff'd,* 914 F.2d 255 (6th Cir.1990);[1] *Certilus v. Peeples,* 101 Lab.Cas. ¶ 34,587, 1984 WL 3175, at *9 (M.D.Fla. July 17, 1984). Others have found such relief can be ordered under the Agricultural Workers Protection Act (MSAWPA), 29 U.S.C. § 1801–71, as an aspect of "wages" governed by that Act. 29 U.S.C. § 1832(a). *See, e.g., Charite v. Jones,* 116 Lab.Cas. ¶ 35,384, 1990 WL 165247 (S.D.Fla.1990). Without reaching the viability of the MSAWPA theory, I note that it is not available to plaintiffs in this case in any event, as the court has already found after a bench trial that defendant was exempt from the MSAWPA. (Opinion and Judgment, docket #'s 238, 239); *see Salazar v. Brown,* 131 Lab.Cas. 33,373, 1996 WL 302673, at *7 (W.D.Mich. April 9, 1996).

I am aware of only one court that has found a private right of action under FICA after analyzing the issue. In *Sanchez v. Overmyer,* 845 F.Supp. 1178 (N.D.Ohio 1993), the court applied the four-part test of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to conclude that Congress must have intended a private right of action under FICA. The court found that FICA was in-

---

**1.** The *Colunga* decision, a case from this court with which I am personally familiar, is especially unreliable precedent. The defendant in *Colunga* proceeded *pro se* and was completely unschooled in law. He raised no issues of substance. The decision in that case was tantamount to default judgment. In its two-page unpublished decision

tended for the "especial benefit" of workers,[2] that implying a cause of action "appears to be consistent with the purposes of the FICA" and that the area was not one entrusted to state law. 845 F.Supp. at 1180–82.

Other courts have strongly disagreed, refusing to imply a cause of action under Supreme Court authority decided after *Cort.* In *Spilky v. Helphand,* No. 91CIV3045, 1993 WL 159944 (S.D.N.Y. May 11, 1993), the court found no evidence of a congressional intent to authorize private lawsuits in this area. Applying the *Cort* analysis, the court discerned no "especial benefit" to workers under FICA, observing that FICA is obviously a tax enactment passed to produce revenue for the government. 1993 WL 159944, at *3–4. The court found plaintiff's FICA claim to be "patently without merit." Other courts have likewise rejected a private cause of action under FICA. *See Deleu v. Scaife,* 775 F.Supp. 712, 716–17 (S.D.N.Y. 1991); *DiGiovanni v. City of Rochester,* 680 F.Supp. 80, 82–83 (W.D.N.Y.1988); *Turner v. Unification Church,* 473 F.Supp. 367, 376–77 (D.R.I.1976), *aff'd,* 602 F.2d 458 (1st Cir. 1979).[3]

I conclude that the Sixth Circuit would likewise refuse to imply a cause of action under FICA or the Social Security Act, for two reasons. First, no court implying such a private right of action has considered the existing statutory scheme and the adequacy of present remedies, as required by the *Sea Clammers* doctrine. When this is done, implication of a private cause of action becomes nearly impossible. Second, the Court of Appeals has recently counseled, in repeated fashion, that the *Cort* test has been modified by more recent Supreme Court decisions "in

favor of an inquiry regarding congressional intent: Did Congress intend to provide a right of action under the statute, or did Congress intend to foreclose private enforcement of the statute?" *Cline v. Rogers,* 87 F.3d at 182; *accord, Local 3–689, Oil, Chem. & Atomic Int'l Union v. Martin–Marietta Eng. Sys., Inc.,* 77 F.3d 131, 134 (6th Cir. 1996); *Bailey v. Johnson,* 48 F.3d 965, 968 (6th Cir.1995). Under this modified test, "the Supreme Court has been increasingly reluctant to find an implied cause of action where Congress had the opportunity to create a private right explicitly but did not do so." *Cline,* 87 F.3d at 182. Consequently, the Sixth Circuit would probably not find persuasive the lower court opinions that mechanically apply the *Cort* factors to find an implied right of action, ignoring the language and structure of the Act. Further, the Sixth Circuit would clearly find it persuasive that Congress has passed thousands of amendments to the Social Security Act and the Internal Revenue Code, virtually on a yearly basis, without once creating a private right of action.

In summary, plaintiffs in the present case concede that neither the Social Security Act nor the Federal Insurance Contributions Act expressly creates any cause of action by which an employee may directly sue the employer to force payment of FICA taxes or even for a declaratory judgment in this regard. In light of the clearly established— and well used—statutory remedies expressly created by Congress, it would appear unwise for any court to imply such a novel cause of action. Workers presently have a remedy under the Social Security Act, 42 U.S.C. § 405(c)(4), to correct their earnings records

affirming the trial court, the Sixth Circuit did not reach the FICA issue.

**2.** I find this conclusion astonishing, as it ignores the fact that FICA imposes a tax on workers as well as employers.

**3.** The only reported court of appeals decision is of limited guidance. In *Calderon v. Witvoet,* 999 F.2d 1101 (7th Cir.1993), the Seventh Circuit reviewed a district court order compelling an employer to make wage reports. The court analyzed the issue under the doctrine of standing, which asks whether plaintiff has suffered a concrete injury. 999 F.2d at 1105–06. The court

found that workers have no standing to enforce FICA obligations, because these are taxes upon the employee and employer alike, designed to benefit the government. *Id.,* at 1106. The court did find standing in workers to enforce statutory reporting requirements under the Social Security Act, and went on to the merits of that claim. *Id.,* at 1106–07. The court jumped directly from the threshold issue of standing to the merits, bypassing the critical issue of an implied cause of action without discussion. In light of the recent pronouncements of the Sixth Circuit concerning implied causes of action, I do not believe that it would accord *Calderon* serious weight.

so that they may receive the benefit of any covered employment. Their right to judicial review after a hearing before the agency is safeguarded by the statute. If this process shows that the worker has earned wages, they are credited to the worker's Social Security account, whether or not FICA taxes are ever collected from the employer. No lawsuit against the employer is necessary. Likewise, the Internal Revenue Service is perfectly capable of enforcing employment tax obligations directly upon employers. Implying a cause of action for employees under FICA would essentially place them in the position of the IRS, raising the possibility of inconsistent results in actions brought by the employee and the IRS, the necessity of joining employees in federal agency lawsuits to prevent inconsistent judgments, and a whole host of other procedural complications not now faced by employers, employees, or the government itself. A complicated statutory benefit and taxation scheme that has existed for sixty years without the implication of private causes of action is best left unmolested by judicial innovation.

### Conclusion

For the foregoing reasons, defendant's motion to dismiss count III (docket # 112), taken as a motion for summary judgment, will be granted.