**Jack MUMA, Plaintiff-Counter Defendant,**

v.

**FINANCIAL GUARDIAN, INC., a Delaware corporation, Defendant,**

**and**

**Financial Guardian Group, Inc., a Delaware corporation, Defendant-Counter Plaintiff.**

Civ. A. No. 82–72392.

United States District Court,
E.D. Michigan, S.D.

Nov. 23, 1982.

Michael Muma, Detroit, Mich., for plaintiff-counter defendant.

A. David Baumhart, III, Bloomfield Hills, Mich., for defendants.

## OPINION

FEIKENS, Chief Judge.

This action began when plaintiff filed a complaint in Oakland County Circuit Court asking for a declaratory judgment. Defendant Financial Guardian, Inc. ("Guardian"), a foreign corporation, removed it on diversity ground to this Court. Defendant Financial Guardian Group, Inc. ("Group") subsequently filed a counterclaim against Muma. Muma now moves to dismiss that counterclaim.[1]

## FACTS

All parties have at all relevant times been engaged in the business of selling insurance. Group hired Muma as its President and Chief Operating Officer ("COO") in 1972. He traded shares he held in Guardian National Corporation, a Michigan corporation, for Group shares. At that time, Muma moved his residence from Michigan to Kansas City, Missouri, where Group is headquartered. Shortly thereafter, the parties established Guardian, and Group became a holding company. Muma became President and COO of Guardian too.

On January 1, 1978, Group and Muma executed a ten-year "Employment Agreement" for Muma to continue as Group's President and COO. Included in the Employment Agreement is a covenant not to compete if Muma left Group's employ.

---

1. At argument on this motion, I denied Group's motion for a preliminary injunction on the counterclaim because I am not convinced Group is likely to prevail on the merits and because it has an adequate remedy at law. *See* Order Denying Motion for Preliminary Injunction (November 15, 1982).

In July 1978, Group's management removed Muma as Guardian's President. Pursuant to a "Severance and Termination Agreement," executed on July 2, 1979, Muma agreed to terminate his employment relationship with Group. That agreement ended the Employment Agreement and provided for severance pay (all of which has been paid).[2] It also contains a covenant (*see* paragraph 3) not to compete. The covenant provides that for five years, or until all other relationships between Muma and Group cease (including stockholding relationships),[3] whichever comes later, Muma:

> will not knowingly directly or indirectly, solicit or interfere with, any business or insurance account of [Group], influence or attempt to influence any person, firm, corporation or other entity to stop or change their employment or business relationship with [Group], or disclose any confidential records or information of [Group].

Muma subsequently reestablished his Michigan residence and continued in the insurance business.

Claiming that he wishes to compete with Group, Muma brought his declaratory judgment action against both Group and Guardian, alleging that the covenant violates Mich.Comp.Laws § 445.761 (1979), which provides:

> All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void.

Thus, Muma asked for a declaration that the covenant is unenforceable in Michigan.

Group then brought a counterclaim against Muma asking for damages for breach of contract (Muma admits he has already breached the covenant) and for injunctive relief prohibiting Muma from further breaches. The instant motion involves only the counterclaim.

## I. *Law to Apply*[4]

The parties agree that the covenant is enforceable under Missouri law. Group thus contends that because the agreement was executed in Missouri, between parties who were Missouri residents at the time of execution, Missouri law should apply. Muma argues that because the question is the enforceability of the covenant in Michigan,[5] Michigan law should apply.

█ In determining a choice of law question, a federal court in a diversity case looks to the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Michigan courts will enforce a Missouri contract, valid there, "to the extent [its] provisions do not contravene the public policy of the forum." *Structural Dynamics Research Corp. v. Engineering Mechanics Research Corp.,* 401 F.Supp. 1102, 1115 (E.D.Mich. 1975) (Feikens, J.); *Lieberthal v. Glens Falls Indemnity Co.,* 316 Mich. 37, 24 N.W.2d 547 (1946); *Curtis v. Mueller,* 184 Mich. 148, 152, 150 N.W. 847 (1915).

Thus if Michigan public policy proscribes the covenant, Michigan law will be applied and the covenant will not be enforced.

## II. *Michigan's Policy*

The provisions of Mich.Comp.Law § 445.-761 prohibiting covenants not to compete

---

**2.** The Severance and Termination Agreement contains a severability provision in paragraph 10. Group contends that it paid for the covenant not to compete as part of Muma's severance pay. However, because of the severability provision, its arguments regarding it are without merit. In *Buell v. Orion State Bank,* 327 Mich. 43, 47, 56, 41 N.W.2d 472 (1950), even though the contract did not contain a severability clause, the court rejected an unjust enrichment argument.

**3.** Muma still holds the largest single block of Group stock shares.

**4.** The Termination Agreement does not specify the law to apply.

**5.** Muma acknowledges he cannot compete with Group in Missouri.

has been in effect, unchanged since 1905.[6] It has been rigorously enforced by the courts. In *E.W. Smith Agency, Inc. v. Sanger,* 350 Mich. 75, 79, 85 N.W.2d 84 (1957), the court considered whether a contractual provision "precluding defendant from engaging in soliciting insurance, in certain territory, for a period of 3 years in competition with plaintiff following the termination of his employment, contravened" § 445.761. The *Sanger* contract was geographically limited to Wayne County while Muma's has no geographical restriction. Muma's applies only to people with prior relationships with Group (including employees); Sanger's restriction was unlimited on its face, but was intended to be limited only to "the customers he had called on during the time he worked for the company." *Id.* at 83, 85 N.W.2d 84. Further, the *Sanger* limitation was only for three years, *id.* at 80, 85 N.W.2d 84, while Muma's is for five years. Thus, the provision in the instant contract is more restrictive than the one *Sanger* held violates Michigan's public policy as established by the legislature.

However, Group argues this case falls within the exceptions detailed in Mich. Comp.Laws § 445.766 (1979), which provides:

This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer furnishes or discloses to the employe a list of customers or patrons, commonly called a route list, within certain territory in which such employe is to work, in which contract the employe agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business for a period of 90 days

after the termination of such contract or services.

There are two separate exceptions contained in this section: The first deals with the sale of a business; the second with an employee's route list. Group argues both exceptions apply.

■ In this case, no sale of a business has occurred. *Sanger, supra,* 350 Mich. at 81, 85 N.W.2d 84. While Muma resigned from Group's management, he still holds a plurality interest of its stock. Counter to the argument that Muma agreed not to compete with new owners of the business, when Muma divests himself of all Group stock, the covenant expires (if the five years have also elapsed).

■ Group also argues that its customer lists and the expiration dates of their policies are akin to route lists which are the second § 445.766 exception. This exception is by its terms limited to ninety (90) days. Muma left Group's employ more than three years ago. Additionally, the exclusion is aimed at salesmen. While Muma may be selling insurance now, when he was Group's President, Muma did not sell insurance policies; his duties were wholly administrative.

Further, Group argues that the expiration dates of its customers' policies are trade secrets. Neither party cites Michigan law regarding this argument, nor has the Court been able to find any. Group points to *State Farm Mutual Insurance Co. v. Dempster,* 174 Cal.App.2d 418, 344 P.2d 821 (1959), which holds that expiration dates are trade secrets. However, in *Woodward Insurance, Inc. v. White,* Ind., 437 N.E.2d 59, 67–69 (1982), the court affirmed a trial court ruling that an insurance agency's customer information (including expiration dates) does not constitute trade secret information. The *White* case, based primarily on the factual finding (admitted here) that the allegedly secret information "was also available to agents of other insurance companies by a variety of means, including obtaining such information directly from customers, . . ." (*id.* at 68) appears to be the

6. *See* 1905 Mich.Pub.Acts 329, § 1 (immediate-    ly effective, June 20, 1905).

better reasoned result. In the absence of any controlling law to the contrary, I will follow *White.*

## SUMMARY

Michigan has a strong public policy against covenants not to compete. Mich. Comp.Laws § 445.761. Restraints on insurance agents who wish to compete with their former employers are among those not permitted. *Sanger, supra.* None of the exceptions advanced by Group (sale of a business, route list, trade secret) apply.

Michigan courts generally apply the law of other jurisdictions to contracts entered into there. However, when application of another state's law would violate Michigan's public policy, Michigan law will prevail. *Structural Dynamics, supra.*

The contractual provision involved here violates Michigan public policy, thus Michigan law should be applied. Application of Michigan law voids the contractual provision. *Sanger, supra.* Because the provision relied on in Group's counterclaim is unenforceable in Michigan, the counterclaim does not state a cause of action upon which relief may be granted. Thus, Muma's motion to dismiss the counterclaim is granted. An appropriate order is entered herewith.