LANSING-LEWIS SERVICES, INC v SCHMITT

Docket No. 106367. Submitted May 1, 1990, at Lansing. Decided December 18, 1990; approved for publication April 19, 1991, at 9:10 A.M.

Lansing-Lewis Services, Inc., brought an action in the Ingham Circuit Court against James E. Schmitt, Joan Schmitt, and others alleging, inter alia, breach of a covenant not to compete, breach of contract, conversion, and nonpayment of past-due accounts arising out of an agreement. A mediation evaluation in plaintiff's favor was rejected by both parties. Following a bench trial, the court, Thomas L. Brown, J., awarded damages for the plaintiff, as well as costs and attorney fees pursuant to MCR 2.403(D). The defendants appealed.

The Court of Appeals *held:*

The covenant not to compete was an unreasonable restraint of trade and was void as a matter of law. The trial court erred in awarding damages for the breach of an invalid and unenforceable covenant not to compete, requiring vacation of that award of damages. However, because the covenant not to compete was not an essential part of the contract when viewed as a whole, it may be severed from the contract, allowing the award of damages for breach of the covenant not to compete to be vacated and the trial court's award of other damages to be affirmed. Because the remaining judgment is more favorable to the defendants than the mediation evaluation, the award of costs and attorney fees for the plaintiff must be vacated and the case remanded for an award of actual costs of the defendants.

1. Former MCL 445.761; MSA 28.61, in effect during the period at issue, provided generally that all agreements or contracts in restraint of trade were illegal and void. Neither of the exceptions provided by former MCL 445.766; MSA 28.66 applied in this case.

2. The trial court erred in ruling that the defendants' chal-

REFERENCES

Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 518, 576, 578.

Validity and construction of retrictive covenant not to compete ancillary to franchise agreement. 50 ALR3d 746.

lenges before and during trial to the legality of the covenant were untimely. The illegality of a covenant not to compete may be raised at any point in the proceedings and need not be pleaded as an affirmative defense.

Affirmed in part, reversed in part, and remanded.

1. CONTRACTS — COVENANTS NOT TO COMPETE — ILLEGAL CONTRACTS.

A covenant not to compete which was unenforceable when entered into does not become enforceable upon the repeal of the statute declaring such covenants illegal (MCL 445.761, 445.766; MSA 28.61, 28.66).

2. CONTRACTS — COVENANTS NOT TO COMPETE — BREACH OF COVENANT — ILLEGALITY OF COVENANT.

The illegality of a covenant not to compete may be raised at any point in an action for the breach of the covenant and need not be pleaded as an affirmative defense.

3. CONTRACTS — COVENANTS NOT TO COMPETE — SEVERABILITY.

An invalid covenant not to compete may be severed from an underlying contract where the covenant is not an essential part of the contract when viewed as a whole.

*Dykema Gossett* (by *Stephen D. Winter* and *John B. Curcio*), for Lansing-Lewis Services, Inc.

*Fowler, Tuttle, Clark & Coleman* (by *Larry D. Fowler*), for James E. Schmitt and Joan Schmitt.

Before: GILLIS, P.J., and BRENNAN and REILLY, JJ.

PER CURIAM. Defendants James E. Schmitt and Joan Schmitt, doing business as Schmitt Fuel Service, appeal as of right from a circuit court judgment awarding $134,075.52 in damages and $92,117.23 in costs and attorney fees under MCR 2.403(O) to plaintiff Lansing-Lewis Services, Inc. We affirm in part and reverse in part.

On June 26, 1969, James Keeley and Lansing-Lewis Company entered into a written agreement whereby Keeley agreed to distribute Lansing-Lewis

Company's petroleum products.[1] The agreement was for a period of one year commencing July 1, 1969, and for successive one-year periods until terminated by written notice "not less than 120 days before expiration of the initial term or any renewal term thereafter." The agreement further provided that (1) Keeley would be considered an independent contractor and not an employee of the company; (2) Keeley would devote all of his time and his best efforts to distributing the products; (3) Keeley would furnish a complete list of his current customers and accounts to the company; and (4) upon termination of the agreement, Keeley would refrain from working or engaging in a competitive business for one year.

On November 15, 1976, Keeley assigned his rights and delegated his duties under the 1969 agreement to defendant James Schmitt. As a part of that assignment, Schmitt agreed in writing to be bound by the terms of the 1969 agreement between Keeley and Lansing-Lewis Company.

Plaintiff Lansing-Lewis Services, Inc., later purchased a majority of the assets of Lansing-Lewis Company and took over the operation of its petroleum distribution business. Lansing-Lewis Company assigned its interest in the 1969 agreement with Keeley to plaintiff.

Schmitt became increasingly dissatisfied with the commission rate being paid to him and other distributors. On March 1, 1978, Schmitt ordered his employees to suspend their deliveries of plaintiff's products. He also demanded that plaintiff increase his commission from .035 to .0425 cents per gallon. In response, plaintiff notified Schmitt that under the terms of the agreement, Schmitt was obligated to perform until a new agreement

---

[1] Keeley is not a party to this appeal.

could be negotiated. That same day, plaintiff exercised its option to terminate the agreement as of July 1, 1978, exactly 121 days before the expiration of the renewal term.

Plaintiff's president and chief operating officer, William Straub, arrived at work the following morning and discovered that Schmitt had removed all of his trucks, as well as tanks, hoses, nozzles, meters, computer records, and several thousand gallons of fuel oil which belonged to plaintiff. In light of Schmitt's actions, plaintiff was required to hire additional personnel and replace its computer records so that it could serve its customers' heating needs during the winter months.

On March 7, 1978, plaintiff commenced the instant action against Keeley, James Schmitt, and his wife, Joan. Count I of plaintiff's first amended complaint sought damages for the unlawful conversion of property belonging to plaintiff. Count II set forth a breach of contract claim arising out of (1) the Schmitts' failure to perform under the contract until July 1, 1978; (2) the Schmitts' failure to abide by the covenant not to compete; (3) the Schmitts' unlawful conversion of property belonging to plaintiff; and (4) the Schmitts' failure to deliver to plaintiff until March 6, 1978, money received and delivery records for February 28, March 1, and March 2, 1978. Count III sought a preliminary injunction enjoining the Schmitts from violating the terms of the covenant not to compete. Count IV alleged that the Schmitts had slandered plaintiff. Count V alleged that the Schmitts intentionally interfered with plaintiff's advantageous business relationship. Count VI sought money for past due accounts owed by the Schmitts to plaintiff.

In June of 1978, plaintiff received information that the Schmitts began doing business as Schmitt

Fuel Service and were actively recruiting and providing service to plaintiff's customers. By the fall of 1978, according to the plaintiff's expert, the Schmitts were successful in luring away between 76 and 108 of plaintiff's customers. Straub estimated that plaintiff's sales fell by as much as fifty percent.

Defendant Keeley subsequently moved for partial summary disposition of Count II on the basis that the covenant not to compete contained in the 1969 agreement was violative of MCL 445.761; MSA 28.61 and was void as a matter of law. Plaintiff, on the other hand, argued that Keeley waived his right to challenge the validity of the covenant by failing to plead the defense in his first responsive pleading. The trial court ruled that the covenant was not void and that defendants were required to refrain from working or engaging in a competitive business for one year.

Following a bench trial, the trial court found in favor of plaintiff. Plaintiff was awarded $125,180.71 ($121,929.10 in lost profits and $3,251.61 in special damages) for defendants' breach of the covenant not to compete, $2,229.74 for the breach of contract claim relating to defendants' failure to perform under the contract until July 1, 1978, $420.94 for the Schmitts' conversion of plaintiff's property and business records, and $6,244.18 for past due accounts owed by the Schmitts to plaintiff. The trial court subsequently denied defendants' motion for a new trial or judgment notwithstanding the verdict.

I

Defendants first contend that the trial court erred in awarding plaintiff $121,929.10 for lost profits and $3,251.61 for special damages due to

defendants' breach of the covenant not to compete. Defendants contend that the covenant was an unreasonable restraint of trade and was void as a matter of law. We agree.

Paragraph 6(j) of the 1969 agreement provides in relevant part:

> That on the termination of the within contract for any cause whatsoever, he will not directly or indirectly engage in a competitive business with that now carried on by the Company, nor will he engage to work for any individual, firm or corporation engaged in the sale and distribution of petroleum products within the territory herein exclusively assigned to him for a period of one (1) year after the date of termination by him (the Dealer).

MCL 445.761; MSA 28.61, which was in effect during the time period involved in this case, generally declared that all agreements or contracts in restraint of trade were illegal and void. The scope of that broad prohibition was, however, limited by MCL 445.766; MSA 28.66, which provided for exceptions to the general rule:

> This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer furnishes or discloses to the employee a list of customers or patrons, commonly called a route list, within certain territory in which such employee is to work, in which contract the employee agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of

business for a period of ninety [90] days after the termination of such contract or services.

Although these statutes were repealed effective March 29, 1985, a void, unenforceable covenant not to compete under the former statutes, contrary to plaintiff's argument, did not become valid and enforceable upon repeal of the statutes. *Product Finishing Corp v Shields,* 158 Mich App 479, 492; 405 NW2d 171 (1987), lv den 430 Mich 859 (1988), cert den 488 US 955 (1988).

The covenant in controversy here violated the statutory prohibition against restraints of trade and did not fall within a recognized exception. The underlying dealer contract provided that Keeley would distribute plaintiff's petroleum products in exchange for exclusive distribution rights to the territories described as yards twenty and seventy. We are unwilling to hold that the execution of a dealer contract for the granting of exclusive distribution rights constitutes the sale of a business or profession. See, generally, *Muma v Financial Guardian, Inc,* 551 F Supp 119 (ED Mich, 1982). Given these facts, no sale of a business or profession for a valuable consideration occurred.

The remaining exception to the broad statutory prohibition against covenants not to compete applied in circumstances where an *employer* furnished or disclosed a list of customers to an *employee.* MCL 445.766; MSA 28.66. Obviously, this exception is inapplicable here because Keeley, an independent contractor and not an employee, furnished *his* list of customers to plaintiff. We therefore conclude that the covenant not to compete was violative of MCL 445.761; MSA 28.61 and was void as a matter of law.

Defendants next contend that the trial court erred, on at least two occasions, in ruling that

defendants' challenges to the legality of the covenant made shortly before and during trial were untimely. We agree. The illegality of a covenant not to compete may be raised at any point in the proceedings and need not be pleaded as an affirmative defense. See *Meek v Wilson,* 283 Mich 679, 688-690; 278 NW 731 (1938).

We have carefully reviewed defendants' remaining allegations of error and find them to be moot, in light of our disposition of the first issue, or without merit. We are not persuaded that the trial court abused its discretion in declining to admit evidence of the terms of an alleged settlement between plaintiff and the Sun Oil Company. Defendants failed to establish that plaintiff was a party to the suit, let alone collected any money. Moreover, the terms of a settlement between C. James Sabo, an operating officer of plaintiff's company, and Sun Oil Company does not determine damages in this breach of contract case between different parties on different theories of liability.

Further, the trial court's findings concerning Joan Schmitt's joint and several liability were not clearly erroneous. James Schmitt testified that he and Joan operated Schmitt Fuel Service and shared the income in what he characterized as a family business. In addition, the evidence showed that Joan Schmitt also kept the records, updated delivery tickets, and acted as the dispatcher, although she was not paid any wages.

Accordingly, the trial court's award of $125,180.71 ($121,929.10 for lost profits and $3,251.61 for special damages) for defendants' breach of the covenant not to compete is vacated, because the invalid covenant not to compete may be severed from the underlying dealer contract given that it was not an essential part of the entire contract when viewed as a whole. See *Rob-*

*ertson v Swindell-Dressler Co,* 82 Mich App 382, 400; 267 NW2d 131 (1978); *Peeples v Detroit,* 99 Mich App 285, 296; 297 NW2d 839 (1980). The remaining award of $8,894.86 ($420.94 for the conversion claim, $2,229.74 for the breach of the contract to deliver claim, and $6,244.18 for accounts receivable) is affirmed.

Furthermore, given that each party to this appeal rejected the mediation award of $12,000 in favor of plaintiff before trial and that the judgment of $8,894.86 is considered more favorable to the Schmitts, the Schmitts are entitled to actual costs. MCR 2.403(O). Therefore, the award of $92,117.23 in actual costs to plaintiff is also vacated. We remand this case to the trial court for a determination of the Schmitts' actual costs. We do not retain jurisdiction.

Affirmed in part, reversed in part, and remanded.