**John McELWEE, Plaintiff,**

v.

**Gary WHARTON, Hazel Wharton, Omni Communications, and Omco, Inc., a Michigan corporation., Defendants.**

No. 1:98CV126.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 3, 1998.

---

**15.** A separate order without opinion was entered on August 11, 1998.

Thomas F. Kcernke, Boyden, Waddell, Timmons & Dilley, Grand Rapids, MI, Kenneth L. McElwee, Slattery McElwee & Jespersen, Short Hills, NJ, for Plaintiff.

Jack L. Hoffman, Wheeler Upham, PC, Grand Rapids, MI, for Defendants

## ORDER

ENSLEN, Chief Judge.

In accordance with the Court's Opinion of this date;

**IT IS HEREBY ORDERED** that Defendant Hazel Wharton's Motion for Summary Judgment (Dkt. No. 14) is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss Count I (Dkt. No. 12) is **GRANTED** and that Count I of

the Amended Complaint is hereby **DISMISSED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Choice of Law Ruling (Dkt. No. 27) is **GRANTED** to the extent that the Court rules that Michigan law applies as to the trade sales representation contract at issue and further rules that the non-competition clause of the contract was illegal and void under applicable Michigan law. Otherwise, the Motion is **DENIED.**

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 35) is **GRANTED** to the extent of the Court's rulings.

### OPINION

This matter is before the Court on the parties' cross-motions for summary judgment and dismissal in a suit challenging the legality of certain provisions of a trade sales representation agreement as to the sale of Bibles and religious books. The contest between the parties has been grimly waged. There are allegations in the record that the one of the Plaintiff's attorneys wants the "blood" of his adversary and has embarked on a "personal crusade" to "make sure" he "suffers." (Dkt. No. 15, Exhibits R and S.) There are allegations that one of the Defendants' attorneys has threatened sanctions to prevent the filing of legitimate allegations and has pursued the enforcement of an illegal agreement for the purpose of financially ruining the Plaintiff. (Dkt No. 23, Declaration of Ken McElwee.) The Court has also received at least one unsolicited letter from an attorney complaining about a fellow attorney's unprofessional conduct.[1] Overall, the litigation reminds one of Ambrose Bierce's definition of a "Christian" as "one who believes that the New Testament is a divinely inspired book admirably suited to the spiritual needs of his neighbor. One who follows the teachings of Christ insofar as they are not inconsistent with a life of sin." Ambrose Bierce, *The Devil's Dictionary* (World Pub. Co.1911). Literary allusions aside, the motions will be granted in part and denied in part.

### FACTS

Plaintiff John McElwee filed suit against Defendants Gary Wharton, Hazel Wharton, Omni Communications, and Omco, Inc. on February 10, 1998. He filed his Amended Complaint on March 24, 1998. Defendants Gary Wharton and Omco, Inc. counter-sued Plaintiff on April 9, 1998. Both complaints have now been answered. The Case Management Order governing this suit establishes a completion date for discovery of December 31, 1998. Jurisdiction is asserted under both 28 U.S.C. § 1331 and § 1332.

Plaintiff alleges that he is a resident of Tennessee and is in the business of selling Bibles and religious books. He alleges that Defendant Omco, Inc. is a Michigan corporation with its principal place of business in Michigan and that it is in the business of selling Bibles and religious books. He alleges that Defendants Gary Wharton and Hazel Wharton are individuals residing in the State of Michigan and that said Defendants did business through a *de facto* partnership, Omni Communications. He further alleges that the Defendants in the name of Omni Communications entered into a trade sale representation agreement with Plaintiff that was illegal on several grounds. According to Plaintiff, the contract, which was signed in June 1980, established a "sham" independent contractor arrangement under which the Defendants improperly avoiding paying employment taxes. (Amended Complaint at ¶¶ 43–48.) According to him, he determined that the conduct of Defendants was illegal in this respect such that when presented with a new sales representation trade agreement in June 1997 he refused to sign the agreement and was terminated as a trade representative on July 13, 1997. (*Id.*) Thus, Plaintiff seeks restitution in Count I for the payment of employment taxes which taxes Defendants should have lawfully paid. (Amended Complaint at ¶¶ 65–66.) Plaintiff also alleges that the trade sales representation agreement signed was illegal under the law of the State of Michigan in that it contained an illegal anti-competition covenant that prevented

---

**1.** In this regard, the lawyers should review the Michigan Rules of Professional Conduct. The Court expects all attorneys to comply with these Rules.

sales representation of publishers represented by Omni within a year of termination with the exception of World Bible Publishers. (Amended Complaint at ¶¶ 22, 74.) He also charges that the Defendants, unbeknownst to him, engaged in illegal anti-competitive conduct by reaching an agreement with World Bible Publishers (which was later acquired by Riverside Book and Bible) not to hire McElwee within a year of the termination of his relationship with Omni. (Amended Complaint at ¶ 31.) According to his Amended Complaint, Defendants' conduct has illegally interfered with his rights to seek business relationships with others. (Amended Complaint at ¶ 72.) Plaintiff has included the trade sales representation agreement as an exhibit to the Amended Complaint. (Amended Complaint, Exhibit A.) The brief document was last signed by Plaintiff.

Defendant Hazel Wharton in her Motion for Summary Judgment (Dkt. No. 14) challenges Plaintiff's allegation that she participated in an Omni Communications partnership with her husband. According to her supporting brief, in the spring of 1980 Gary Wharton operated a sole proprietorship in the name of Omni Communications. (*Id.* at 1). The name "Omni Communications" was then a service mark licensed by the U.S. Patent and Trademark Office to Gary Wharton. (Dkt. No. 15, Exhibit A.) At the end of June, 1980, Omni Communications by signature of Gary Wharton approved the challenged trade sales representation agreement with John McElwee. (Dkt. No. 15, Exhibit B.) Thereafter, Omco, Inc. was incorporated by Gary Wharton on or about January 3, 1981. (Dkt. No. 15, Exhibit D.) Omco, Inc. assumed both the assets and liabilities of the sole proprietorship. (Dkt. No. 27, at 1 note 1). According to Hazel Wharton's Affidavit, she took no part in the operation of the sole proprietorship and "never had direct discussions with John McElwee when he was negotiating with my husband to become a sales representative with the business." (H. Wharton Affidavit at ¶ 7.) She admits that she and Gary Wharton "may have talked . . . about his negotiations with Mr. McElwee," but denies any specific recollection of those conversations. (Wharton Affidavit at ¶ 7.) She admits that the corporation named her

to the Omco, Inc. Board of Directors in 1981 and as Secretary of Omco, Inc. in 1981, though she says that Gary Wharton made all business decisions for the corporation regarding sales representatives. (*Id.* at ¶ 8.) She admits working for Omco, Inc. between 1984 and 1995, but characterizes her work with Omco, Inc. as that of an employee handling accounts receivable. (*Id.* at ¶ 9.) She says that Gary Wharton was responsible for negotiating with sales representatives on behalf of Omco, Inc. (*Id.* at ¶ 11.) She says that in 1997 she may have had discussions with Gary Wharton relating to John McElwee but was never involved in making decisions as to John McElwee. (*Id.* at ¶ 11.)

Hazel Wharton's characterizations of her role with both Omni Communications and Omco are contradicted by the declarations of the Plaintiff and Nancy Hawkins and various documents filed by the Plaintiff. According to John McElwee, Gary and Hazel Wharton held out Omco, Inc. as a business run by Gary and Hazel Wharton. Several documents are cited as evidence of this, though each of the documents relate to statements about Omni after incorporation of Omco, Inc. (Dkt. No. 23, Exhibits B–H). John McElwee has indicated in his Declaration that Hazel Wharton was intimately involved in the day-to-day operations of Omco including sales and marketing and enforcement of company policy. (Dkt. No. 23, Declaration of John McElwee at ¶ 4.) McElwee has declared that he initially joined Omni because Gary Wharton repeatedly referred to Hazel Wharton as his business partner. (*Id.* at 8.) A former sales representative's wife (Nancy Hawkins) says that in 1981 Hazel Wharton held herself out to her and her husband as a partner in Omni Communications and persuaded Gary Wharton to employ her husband as a representative. (Dkt. No. 23, Declaration of Nancy Hawkins).

Defendants have brought the issue of the legality of the anti-competition clause to the Court's attention by the filing of a Motion for Choice of Law Ruling as to the anti-competition covenant. It is agreed by the parties that the choice of law (Tennessee versus Michigan law) is a dispositive issue in this litigation in that its resolution in Defendants'

favor would result in the dismissal of Count V of the Amended Complaint. (Stipulation, Dkt. No. 42; and Order, Dkt. No. 46.) Plaintiff has also requested partial summary judgment as to Count V. The facts relevant to the formation of the agreement (aside from the participation of Hazel Wharton) are essentially undisputed. Defendants have also moved to dismiss Count I, relating to reimbursement for federal employment taxes, due to insufficiency of the allegations.

### STANDARD FOR DISMISSAL

Inasmuch as Defendants seek dismissal of the Plaintiff's claims for tax restitution in Count I of the Amended Complaint, the instant controversy is governed by Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a court must accept all well-pleaded allegations of the complaint as true and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Lillard v. Shelby County Board of Educ.,* 76 F.3d 716, 724 (6th Cir.1996). Motions under Rule 12 raising matters outside the pleadings are to be decided under Federal Rule of Civil Procedure 56. Fed. R. Civ. Proc. 12(c).

### STANDARD FOR SUMMARY JUDGMENT

Inasmuch as Defendant Hazel Wharton seeks summary judgment as to the claims against her and inasmuch as the parties seek dispositive rulings as to Count V, this matter is governed by Federal Rule of Civil Procedure 56. Under Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *City Management Corp. v. U.S. Chemical Co., Inc.,* 43 F.3d 244, 250 (6th Cir.1994). The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the non-moving party to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine issue of material fact. *Bill Call Ford, Inc. v. Ford Motor Co.,* 48 F.3d 201, 205 (6th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment against the non-movant is appropriate if, after adequate opportunity for discovery, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, credibility determinations and the weighing of disputed evidence are to be left for the jury. All legitimate inferences supporting the non-movant are to be drawn in the non-movant's favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

### LEGAL ANALYSIS

#### 1. Tax Restitution

Plaintiff has requested in Count I of his Amended Complaint restitution from Defendants for "employment taxes" allegedly owed by Defendants, but paid by Plaintiff. The term "employment taxes," generally is understood to refer to: taxes under the Federal Insurance Contributions Act taxes ("FICA"), 26 U.S.C. §§ 3101 *et seq.;* taxes under the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. §§ 3301 *et seq.;* and federal income tax wage withholding pursuant to 26 U.S.C. §§ 3401 *et seq. Hospital Resource Personnel, Inc. v. United States,* 68 F.3d 421, 424 (11th Cir.1995); Peter J. Allman, Withholding, "Social Security and Unemployment Taxes on Compensation," 392–3rd Tax Management Portfolio (BNA 1996). Plaintiff's claim for restitution in Count I apparently concerns tax payments he made under the Self–Employment Contribution Act, 26 U.S.C. § 1401 *et seq.,* ("SECA") which, had he been treated as an employee,

would have been made by the employer under FICA.[2]

Under FICA, required FICA contributions are split between an employee and employer. *Salazar v. Brown,* 940 F.Supp. 160, 163 (W.D.Mich.1996); 26 U.S.C. §§ 3101 and 3111. Under SECA, a self-employed independent contractor is required to pay his or her own SECA taxes. For years after 1989, the total contribution under SECA and FICA is 15.3 percent of self-employment income or wages, respectively.[3] The financial effect of this tax treatment on the independent contractor is now for the most part diminished by the fact that the contractor may deduct one-half of the SECA tax contributions from income for federal income tax purposes. *See* 26 U.S.C. § 164(f). Nevertheless, were the Internal Revenue Service to re-characterize self-employment income as wages for the purposes of these statutes, the re-characterization would have a significant adverse impact on the employer since it might result in large penalties and interest for the failure to file returns and to timely pay the taxes. *See* 26 U.S.C. § 6672; Rev. Ruling 71–86, 1971–1 C .B. 285.

Assuming from the bare allegation that Plaintiff was an employee of Defendants, *see* Rev. Rul. 87–41, 1987–1 C.B. 296, Defendants nevertheless ask that Count I of the Amended Complaint be dismissed because Plaintiff has no recognized legal basis for recovering tax payments from the Defendants. Defendants' argument cites many cases decided under 26 U.S.C. § 7401, which stand for the proposition that a third-party cannot bring a *qui tam action* for unpaid taxes without first obtaining the consent of the Secretary of Treasury and the Attorney General of the United States. Plaintiff's response is that he has not filed a *qui tam* action but a suit for restitution for the payment of federal taxes of another. Plaintiff cites as authority for this legal theory George E. Palmer, 3 *The Law of Restitution* § 4.19 (1978). However, as argued by Defendants, the discussion in Palmer's treatise concerns restitution for state property taxes and not federal taxes. No authority is cited for the proposition that a federal taxpayer who has mistakenly paid a tax owed by another may sue the other for restitution. The holding in *Salazar v. Brown,* 940 F.Supp. 160 (W.D.Mich.1996) is that there is no statutory cause of action under FICA that an employee can bring against an employer for nonpayment of FICA taxes. Although Plaintiff wishes to proceed on an equitable theory of recovery rather than under a statute, the rationale in *Salazar* applies equally to a restitution claim. Namely, as in *Salazar,* there is no need to recognize a new equitable theory of recovery where the Plaintiff has available other remedies to redress his alleged losses. First, as noted in *Salazar,* the employee may pursue an administrative action under the Social Security Act inasmuch as the employee characterization affects rights to retirement benefits. *See, e.g., Jabbar v. Secretary of Health & Human Services,* 855 F.2d 295 (6th Cir. 1988). Second, the employee may urge the Internal Revenue Service to enforce the legal obligations of the employer to pay the taxes. Third, the employee who has mistakenly paid SECA taxes which were not due may administratively claim a refund from the Internal Revenue Service under 26 U.S.C. § 6511(a). If and when the claim for refund is denied, the individual may sue for the refund pursuant to 28 U.S.C. § 1346(a). *See, e.g., David v. United States,* 551 F.Supp. 850, 852 (C.D.Cal.1982); *see also Ware v. United States,* 67 F.3d 574, 575 (6th Cir.1995). In light of the available legal remedies, there is no need to recognize an equitable right for restitution as to federal employment taxes. As such, Defendants' Motion to Dismiss Count I shall be granted since it fails to state a claim for which relief may be granted.

**2.** Restitution is inapplicable as to FUTA taxes since Plaintiff would not pay FUTA taxes as an independent contractor. *See United States v. Lee,* 455 U.S. 252, 254 n. 1, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). Restitution is also inapplicable as to withholding. Whether monies are withheld from wages by the employer or by the independent contractor in the form of estimated tax payments the amounts withheld are applied to the income tax liability of the taxpayer. *See* 26 U.S.C. § 6513(b) and § 31.

**3.** The FICA and SECA tax rates are different for years preceding 1990. *See Salazar,* 940 F.Supp. at 163.

## 2. Hazel Wharton

■ Defendant Hazel Wharton requests summary judgment as to the claims against her on the ground that she did not participate in any wrongful conduct and was not a principal of Omni Communications. Plaintiff's response, as noted above, contests the characterizations made by Hazel Wharton. The parties' briefing focuses attention on Michigan Compiled Laws Section 449.16, which provides in pertinent part:

> When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has on the faith of such representation, given credit to the actual or apparent partnership....

Mich. Comp. Law § 449.16(1). According to the Michigan Court of Appeals, proof of partnership by estoppel under the statute requires two elements:

> (1) that the defendant represents himself to be a partner or consents to another's representation that he is a partner of one with whom he is not a partner and (2) that the person to whom the false representation is made relies on that representation to his detriment.

*American Casualty Co. v. Costello,* 174 Mich. App. 1, 435 N.W.2d 760, 764 (1989). While the Michigan Supreme Court has not parsed the elements of the statute, the Court believes that this interpretation would be adopted by the Michigan Supreme Court because it is consistent with the statutory language.

■ Plaintiff argues that this case is like *Maynard v. Dorner,* 56 Mich.App. 7, 223 N.W.2d 338 (1974) such that the facts support a factual question of partnership by estoppel as to Hazel Wharton. Defendant Wharton seeks to distinguish *Maynard* on

the ground that there is no evidence that Hazel Wharton prior to the incorporation of Omco, Inc. represented to John McElwee that she and her husband were business partners. This fact, she contends, requires a finding in her favor as to summary judgment. Defendant is certainly correct that the time period before incorporation is crucial to a determination of partnership by estoppel in this instance. This is the time period in which the allegedly illegal contract was made. After incorporation, the acts in question were those of the corporation *per se* and not those of a partnership. Defendant's reading of the statute, however, unnecessarily narrows its scope. A "partner by estoppel" is not only liable for reliance that the partner has induced but also reliance that others have induced with the consent of the partner. In this case, according to McElwee, Gary Wharton represented to McElwee that he and Hazel Wharton were partners and on the strength of this representation McElwee entered into the contract. There is no direct evidence that Hazel Wharton authorized this representation. However, there is sufficient circumstantial evidence of consent for the matter to be decided by jury. Namely, since Hazel Wharton was making representations near that time by words and conduct to Nancy Hawkins and her husband that she and Gary Wharton were partners, it may be inferred that she consented to Gary Wharton's statements to McElwee regarding the "partnership."[4] As such, summary judgment under Rule 56 is denied since there are genuine issues of material fact which must be determined by jury.[5]

## 3. Count V

All parties have requested summary judgment or partial summary judgment as to Count V of the Amended Complaint. Count V asserts liability against Defendants on the ground that they, by entering into the covenant not to compete, illegally restrained

4. Defendant Wharton has questioned the meaning of Nancy Hawkins' declaration in light of inconsistencies developed through her deposition testimony. While such inconsistencies may diminish her credibility, there is still a sufficient factual question to merit trial.

5. Although no explicit motion for Rule 11 sanctions has been filed, to the extent that Defendants intended to request Rule 11 sanctions because of the joinder of Hazel Wharton such request is also denied.

trade in violation of former Michigan Compiled Laws Section 445.761. Defendants ask for a determination that Tennessee law, not Michigan law, controls the legality of its trade sales representation agreement and regardless of the controlling law that the agreement does not constitute an illegal restraint of trade. Plaintiff, to the contrary, asserts that Michigan law controls and that under the former statute the agreement constitutes an illegal restraint of trade.

Defendants assert, and Plaintiff does not protest, that at common law and under Tennessee law reasonable non-competition agreements are valid and enforceable. *Thompson Recruitment Advertising, Inc. v. Wedes,* 651 F.Supp. 107 (E.D.Mich.1986); *William B. Tanner Co. v. Taylor,* 530 S.W.2d 517, 522 (Tenn.Ct.App.1974). However, Michigan law for a period of some eighty years departed from the common law rule. In 1905, the following statute was codified:

> All agreements and contracts by which any person, co-partnership, or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void.

Mich. Comp. Laws Ann. § 445.761 (West 1969) (repealed effective March 29, 1985). This section was limited by a later section as follows:

> This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the goodwill thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer furnishes or discloses to the employee a list of customers or patrons, commonly called a route list, within certain territory in which the employee is to work, in which contract the employee agrees not to perform similar services in such territory for himself or another engaged in a like

or competing line of business for a period of 90 days after the termination of such contract or services.

Mich. Comp. Laws Ann. § 445.766 (West 1969) (repealed effective March 29, 1985).

These statutory sections were both repealed in order to reinstate the common law rule by the passage of the Michigan Antitrust Reform Act ("MARA"), P.A.1986, No. 274, Section 17, effective March 29, 1985. Mich. Comp. Laws § 445.787. Despite the repeal of the previous sections, MARA, at Section 18, contained a savings clause, in order to make the repeal ineffective as to prior fines, forfeitures and liability incurred. Mich. Comp. Laws § 445.788. It also contained the following provision relating to agreements not to compete:

> (1) An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and which expressly prohibits an employee from engaging in employment or a line of business after the termination of employment if the agreement or covenant is found to be reasonable
>
> . . . .
>
> *(2) This section shall apply to covenants and agreements which are entered into after March 29, 1985.*

Mich. Comp. Laws § 445.774a (emphasis added). Thus, it is clear from the statutes that the state legislature intended that MARA would apply to agreements entered into after March 29, 1985 and that the repealed section would control agreements entered into on March 29, 1985 and before. This interpretation of the statute has been followed by several Michigan Court of Appeals decisions. *See Rehmann, Robson & Co. v. McMahan,* 187 Mich.App. 36, 466 N.W.2d 325 (1991); *Lansing–Lewis Services, Inc. v. Schmitt,* 188 Mich.App. 647, 470 N.W.2d 405, 408 (1991); *Production Finishing Corp. v. Shields,* 158 Mich.App. 479, 405 N.W.2d 171 (1987). The only authority to the contrary, the decision in *Thompson Recruitment Advertising, Inc. v. Wedes,* 651 F.Supp. 107 (E.D.Mich.1986), appears to have overlooked the statutory language of Mich. Comp. Laws § 445.774a(2) and the implications of prior state law decisions. As

such, assuming that Michigan law applies, the Court will apply the pre–1985 statutes to said agreement.

■ This raises the important question of whether Michigan law or Tennessee law controls. Defendants contend that Tennessee law applies because the contract was entered into in Tennessee (because the last act necessary to put it into effect, its signature by the last signor, John McElwee, was done in Tennessee on June 30, 1980). It is not disputed by Plaintiff that McElwee last signed the contract in Tennessee. However, Plaintiff does dispute that Tennessee law applies. Defendants have cited pre–1995 Michigan case law for the proposition that contract construction is governed by the law of the state of contracting. As Plaintiff correctly notes, Michigan courts have departed from this approach following the 1995 Michigan Supreme Court decision in *Chrysler Corp. v. Skyline Industrial Services, Inc.*, 448 Mich. 113, 528 N.W.2d 698 (1995). Therein, the Michigan Supreme Court observed:

> The predominant view in Michigan has been that a contract is to be construed according to the law of the place where the contract was entered into. [Footnote omitted.] The trend nationally, however, has been to adopt the Restatement approach emphasizing the law of the place having the most significant relation with the matter in dispute. [Footnote omitted.]
> . . . .
> The trend in this Court has been to move away from traditional choice-of-law conceptions toward a more policy-centered approach. [Footnote omitted.] . . . .
> Much as lex loci delicti had proven too inflexible for resolution of tort conflicts, the rigid "law of the place of contracting" approach has become outmoded in resolving contract conflicts. Rather, Sections 187 and 188 of the Second Restatement, with their emphasis on examining the relevant contacts and policies of the interested states, provide a sound basis for moving beyond formalism to an approach more in line with modern-day contracting realities. [Footnote omitted.]

*Id.* at 702–03. In light of such words, the Sixth Circuit Court of Appeals has determined that the Michigan Supreme Court has adopted the Restatement approach to choice of law in contract disputes. *Equitable Life Assur. Society v. Poe,* 143 F.3d 1013, 1015 (6th Cir.1998).

Section 188 of the Restatement provides:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

(2) In the absence of an effective choice of law by the parties (*see* § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> (c) the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement of the Law (Second) of Conflicts of Law § 188.

Section 6 of the Restatement provides as follows:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no directive, the factors relevant to the choice of the applicable rule include

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* at § 6.

Applying the above principles, the Court determines the following: The contract was negotiated telephonically from both Michigan and Tennessee. The contract was signed in both Tennessee and Michigan and was last signed in Tennessee. Plaintiff resides in Tennessee and Defendants reside in Michigan. Plaintiff performed his share of the contract, by selling books, mostly throughout the southeastern United States. Defendants performed their share of the contract, by paying the Plaintiff, through sending checks from Michigan to Tennessee. Michigan and Tennessee both have interests in enforcing their state laws relating to non-competition agreements and there is no difficulty in applying either law. However, Michigan has a special interest in enforcing its law since non-enforcement would violate the public policy expressly announced in former Mich. Comp. Laws § 445.761 (West 1969) and retained through the savings clause. The particular contract clause in question also bears a special relationship to Michigan in that it contains an exception relevant to World Bible Publishers—a company located in Grandville, Michigan. Based on an assessment of all of the Restatement factors and policies, the Court determines that Michigan, and not Tennessee, bears a closer relation to the subject matter of the representation contract and that Michigan law should control enforcement of the trade sales representation agreement.

■ Thus, the question arises whether the non-competition clause is enforceable or void under the Michigan statute. Defendants cite the case of *Rehmann, Robson & Co. v. McMahan,* 187 Mich.App. 36, 466 N.W.2d 325 (1991) for the proposition that the repealed Michigan statutes permit a one-year limitation on competition. In *Rehmann,* the Michigan Court of Appeals held that an indemnity clause of an employment contract which required an accountant to indemnify his former employer if he opened a competing accounting practice serving clients of his employer within two-years of termination was enforceable. The *Rehmann* court upheld the clause because it did not prevent competition but rather required indemnity as a cost of servicing the employer's clients when confidential business information (a client list) was used. Its holding followed from the Michigan Supreme Court's holding in *Follmer, Rudzewicz & Co. v. Kosco,* 420 Mich. 394, 362 N.W.2d 676 (1984), which held that a similar clause was enforceable under the exception for protection of client lists provided that there was proof that clients as to which indemnity was requested were obtained as a result of the confidential information. The holding in *Rehmann,* therefore, does not support the Defendants' conclusion that (for pre–1985 sales agreements under Michigan law) all reasonable "anti-piracy" clauses are enforceable. Rather, to be enforceable, such clauses must be aimed at one of the statutory exceptions to the public policy against non-competition clauses. The clause in this case is not aimed at protecting client lists. The suppliers of Omni Communications and their products are widely known to those in the industry as well as those interested in purchasing their products. This is not, like a list of customers that the Plaintiff might keep, the type of confidential business information that may be protected under these statutes. *See Lansing–Lewis Services, Inc. v. Schmitt,* 188 Mich. App. 647, 470 N.W.2d 405 (1991) (holding that exception for employer-supplied customer lists was inapplicable to one-year anti-competition clause unrelated to customer list); *Muma v. Financial Guardian, Inc.,* 551 F.Supp. 119 (E.D.Mich.1982) (same).

Therefore, the Court determines as a matter of law that the instant covenant not to compete was illegal and void under the applicable Michigan law. In this regard, Defendants' Motion for Choice of Law Ruling is denied except that the Court rules as indicated. Plaintiff's Motion for Partial Summary Judgment is, thus, granted to the extent of the Court's rulings in this Opinion. The Court defers the question of damages as to Count V for trial or later ruling, that question having been incompletely briefed.

### CONCLUSION

For the reasons stated, the parties' motions will be granted in part and denied in part as stated in the Court's Opinion. An order shall issue consistent with this Opinion.