**130 Nev., Advance Opinion 92**

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN RE: CAY CLUBS. | No. 58176 |

DAVID B. CLARK; ANN CLARK;
DONALD W. GILLIS; NELL C. GILLIS;
PETER GILLIS; MARY PISCITELLI;
THOMAS TEDESCO; KENNETH B.
RITCHEY; DEBRA A. RITCHEY;
MICHAEL GIANFORTE; KYLE SMITH;
NANCY HELGESON; RAYMOND D.
REED, II; BRYAN SOPKO;
CHRISTOPHER T. WILSON; JAY
JADEJA; KETAN PATEL; RAJESH
PATEL; PARESH SHUKLA; ROSANNO
DELARA; RANDALL J. GOYETTE;
RITA M. GOYETTE; JOHN
THOMPSON; MICHAEL ZARI;
MICHAEL CROUCH; ALEX ARRIAGA;
MARIUS SMOOK; JAMES MCNEIL;
SUZAN MCNEIL-TUSSON; LOLITA
ALVAREZ; AND DOLORES CERALVO,
Appellants,
vs.
JDI LOANS, LLC; JDI REALTY, LLC;
AND JEFFREY AEDER,
Respondents.

**FILED**

DEC 0 4 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

| | |
|---|---|
| IN THE MATTER OF CAY CLUBS. | No. 59751 |

DAVID B. CLARK; ANN CLARK;
DONALD W. GILLIS; NELL C. GILLIS;
PETER GILLIS; MARY PISCITELLI;
THOMAS TEDESCO; KENNETH B.
RITCHEY; DEBRA A. RITCHEY;
MICHAEL GIANFORTE; KYLE SMITH;
NANCY HELGESON; RAYMOND D.
REED, II; BRYAN SOPKO;
CHRISTOPHER T. WILSON; JAY

JADEJA; KETAN PATEL; RAJESH
PATEL; PARESH SHUKLA; ROSANNO
DELARA; RANDALL J. GOYETTE;
RITA M. GOYETTE; JOHN
THOMPSON; MICHAEL ZARI;
MICHAEL CROUCH; ALEX ARRIAGA;
MARIUS SMOOK; JAMES MCNEIL;
SUZAN MCNEIL-TUSSON; LOLITA
ALVAREZ; AND DOLORES CERALVO,
Appellants,
vs.
JDI REALTY, LLC; JDI LOANS, LLC;
AND JEFFREY AEDER,
Respondents.

Petition for en banc reconsideration of a panel opinion in consolidated appeals from a district court summary judgment certified as final under NRCP 54(b) and an order awarding costs. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Petition granted; affirmed in part, reversed in part, and remanded.*

Lemons, Grundy & Eisenberg and Alice Campos Mercado and Robert L. Eisenberg, Reno; Gerard & Associates and Robert B. Gerard and Ricardo R. Ehmann, Las Vegas,
for Appellants.

Lionel Sawyer & Collins and Charles H. McCrea, Jr., and Lynda Sue Mabry, Las Vegas,
for Respondents.

Morris Law Group and Steve L. Morris, Las Vegas,
for Amici Curiae.

 

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, SAITTA, J.:

On March 6, 2014, a panel of this court issued an opinion examining the partnership-by-estoppel doctrine and affirming in part, reversing in part, and remanding a district court order that determined on summary judgment that the doctrine did not apply. Because this case involves a substantial precedential and public policy issue, we now grant en banc reconsideration to consider an issue that the prior opinion did not directly address: whether the partnership-by-estoppel doctrine must be based on a transaction between the complainant and the purported partnership. NRAP 40A(a). We thus withdraw the March 6 opinion and issue this opinion in its place. After considering the necessity of a transaction and the other aspects of establishing a partnership-by-estoppel claim, we affirm in part, reverse in part, and remand.[2]

After purchasing condominiums at a resort named Las Vegas Cay Club, the appellants (hereinafter the purchasers) filed suit against approximately 40 defendants, including Cay Clubs and respondents Jeffrey Aeder; JDI Loans, LLC; and JDI Realty, LLC. The purchasers alleged that: (1) Cay Clubs ran Las Vegas Cay Club, (2) Cay Clubs inflated

---

[1]The Honorable Kristina Pickering, Justice, voluntarily recused herself from participation in the decision of this matter.

[2]MGM Resorts International filed an amicus curiae brief in support of the petition for en banc reconsideration, which the Las Vegas Metropolitan Chamber of Commerce joined.

 

the condominiums' value by advertising that it would develop Las Vegas Cay Club into a luxury resort, (3) Cay Clubs' marketing materials represented that it was in a partnership with JDI Loans and JDI Realty (collectively, the JDI entities), and (4) the purchasers bought condominiums and engaged in other transactions on the belief that the purported partnership provided the expertise and resources to execute Las Vegas Cay Club's transformation. They claimed that Cay Clubs and others engaged in actionable wrongdoings while abandoning the plan to improve Las Vegas Cay Club and leaving the purchasers with "worthless property." The purchasers asserted that Aeder and the JDI entities were liable for these actionable wrongdoings under NRS 87.160(1)—a statute that codifies the partnership-by-estoppel doctrine. However, Aeder and the JDI entities prevailed on a motion for summary judgment with respect to their liability under NRS 87.160(1) and the other claims asserted against them.

Provided that other conditions are met, NRS 87.160(1) imposes partnership liability on a party where, with the party's "consent[ ]," there is a representation that the party is a "partner" and another party has "given credit" to the purported "partnership." In addressing these consolidated appeals, we clarify the meaning and application of NRS 87.160(1).[3] We conclude that the statute may impose

---

[3]We also considered NRS 87.4332(1), a similar statute that appears to codify the partnership-by-estoppel doctrine, but because the parties' contentions operate on the implied premise that NRS 87.160(1) is the statute that is applicable to this matter, and because we find that the application of NRS 87.4332(1) would not change the disposition of this opinion, we do not address it further.

partnership liability where there is a representation of a joint venture rather than a partnership, that the consent required for partnership by estoppel may be manifested expressly or may be fairly implied from the liable party's conduct, that the meaning of the statute's phrase "given credit" is not limited to the extension of financial credit, and that the reliance on the representation of a partnership or joint venture must be reasonable. Moreover, the statute may impose partnership liability with respect to any claims that implicate the element of reasonable reliance on which the partnership-by-estoppel doctrine is based. In light of these clarifications, we conclude that the district court erred in granting the JDI entities summary judgment as to their liability under NRS 87.160(1).

## FACTS AND PROCEDURAL HISTORY

Based on the purchasers' evidence and allegations below, Cay Clubs appears to be a business that developed and sold condominiums at a resort called Las Vegas Cay Club. As indicated in the purchasers' allegations and Aeder's deposition testimony, Aeder created and managed the JDI entities, which extended financial support for the development of Cay Clubs' properties. The purchasers alleged that they entered into purchase agreements for Las Vegas Cay Club condominiums and engaged in related transactions with Flamingo Palms Villas, LLC, which Cay Clubs allegedly created and controlled. According to their allegations and supporting affidavits, the purchasers engaged in these transactions (1) after reviewing marketing materials, which advertised that Las Vegas Cay Club would be improved and developed into a luxury resort and which represented a partnership between Cay Clubs and the JDI entities; and (2) on the belief that the partnership relationship between Cay Clubs and the JDI entities provided the experience and financial wherewithal to develop the advertised luxury resort.

Believing that Cay Clubs disingenuously abandoned the plan to improve Las Vegas Cay Club and fraudulently took the purchasers' money, the purchasers filed suit against approximately 40 defendants, including Cay Clubs, Aeder, and the JDI entities. The claims included, but were not limited to, fraudulent misrepresentation, securities violations, deceptive trade practices, civil conspiracy, and fraudulent conveyances of money. Additionally, the purchasers pleaded that the JDI entities and Aeder were liable under NRS 87.160(1), Nevada's partnership-by-estoppel statute, for the wrongdoings of Cay Clubs.

After answering the complaint, Aeder and the JDI entities filed a motion for summary judgment. They contended that there was an absence of evidence to support the complaint and that the parol evidence rule and the purchase agreements prevented the purchasers from relying on evidence of representations of a partnership. They maintained that NRS 87.160(1) did not apply to the purchasers' tort-based claims because the statute imposed liability only for claims sounding in contract. They also argued that the statute did not apply to any of the claims because it conditioned liability on the extension of financial credit, which was not extended by the purchasers. Moreover, they maintained that NRS 87.160(1) could not be used to impose liability against Aeder and the JDI entities because the purchasers transacted solely with Flamingo Palms Villas and not with the purported partnership between Cay Clubs, Aeder, and the JDI entities on which their partnership-by-estoppel claim was based.

The purchasers opposed the motion. Submitting additional evidence in support of their complaint, they argued that issues of fact remained with respect to Aeder's and the JDI entities' liability, especially

with respect to their liability under NRS 87.160(1). We reserve a more detailed discussion of the purchasers' evidence for our analysis of whether genuine issues of material fact remained with respect to Aeder's and the JDI entities' liability under NRS 87.160(1).

After a hearing, the district court granted the motion for summary judgment in favor of the JDI entities and Aeder upon finding that no genuine issues of material fact remained as to their liability for any of the asserted claims, including the partnership-by-estoppel claim under NRS 87.160(1). In so doing, it specifically noted that a "reference to a 'strategic partner'" in the marketing materials was insufficient for partnership by estoppel.

The order granting summary judgment was later certified as final under NRCP 54(b). In addition, the district court awarded costs to the JDI entities and Aeder. These consolidated appeals followed. A panel of this court issued an opinion affirming in part, reversing in part, and remanding a district court order granting summary judgment. After the panel denied the JDI entities' petition for rehearing, the JDI entities petitioned for reconsideration.

## DISCUSSION

*The parties' argument on appeal*

The parties dispute whether the district court erred in granting summary judgment in favor of Aeder and the JDI entities regarding their liability as putative partners with Cay Clubs under NRS 87.160(1). Modeled after section 16 of the 1914 version of the Uniform Partnership Act (UPA), NRS 87.160(1) codifies the common law partnership-by-estoppel doctrine. *See* 1931 Nev. Stat., ch. 74, § 1, at 112, 116; *see also Facit-Addo, Inc. v. Davis Fin. Corp.*, 653 P.2d 356, 359-60

(Ariz. Ct. App. 1982) (providing that Arizona's partnership-by-estoppel statute—which is substantially identical to NRS 87.160(1)—codifies the partnership-by-estoppel doctrine). As long as other conditions are met, NRS 87.160(1) provides that a person may incur partnership liability where there is a holding out of that person as a partner, with the consent of that person being held out, and another person gives credit to the purported partnership upon believing in the representation:

> When a person, by words spoken or written or by conduct, represents himself or herself, or *consents* to another representing him or her to any one, as a partner in an existing partnership or with one or more persons not actual partners, the person is liable to any such person to whom such representation has been made who has, on the faith of such representation, *given credit* to the actual or *apparent partnership*, and if the person has made such representation or consented to its being made in a public manner the person is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

(Emphases added.) The parties offer different interpretations of this statute. In so doing, they disagree on the meaning of "partnership," what type of consent must be manifested for liability under the statute, and the meaning of "given credit." Aeder and the JDI entities maintain that NRS 87.160(1) requires a reasonable reliance on the representation of a partnership. They also dispute the statute's applicability to claims that do not sound in contract. Under dissimilar interpretations of NRS 87.160(1), the parties necessarily disagree over whether genuine issues of material fact precluded the district court's grant of summary judgment with respect to Aeder's and the JDI entities' liability under NRS 87.160(1).

Prior to this appeal, this court lacked the chance to address in any significant depth the partnership-by-estoppel doctrine or NRS 87.160(1)'s meaning. We do so now. Because the arguments concern issues of statutory interpretation and the grant of a summary judgment, we engage in de novo review of the matters raised on appeal. *Cromer v. Wilson*, 126 Nev. 106, 109, 225 P.3d 788, 790 (2010).

### *NRS 87.160(1)'s meaning*

In interpreting NRS 87.160(1), our ultimate goal is to effectuate the Legislature's intent. *Cromer*, 126 Nev. at 109, 225 P.3d at 790. We interpret a clear and unambiguous statute pursuant to its plain meaning by reading it as a whole and giving effect to each word and phrase. *Davis v. Beling*, 128 Nev. ___, ___, 278 P.3d 501, 508 (2012). We do not look to other sources, such as legislative history, unless a statutory ambiguity requires us to look beyond the statute's language to discern the legislative intent. *State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 294, 995 P.2d 482, 485 (2000). Moreover, our interpretation of NRS 87.160(1) is guided by the following rules that the Legislature set out: (1) the law of estoppel applies to NRS 87.160(1), (2) this court is not to apply "[t]he rule that statutes in derogation of the common law are to be strictly construed," and (3) the statutory scheme that contains NRS 87.160(1) "must be interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." NRS 87.040(1)-(2), (4).

### *The term "partnership" in NRS 87.160(1)*

When arguing about the absence or presence of genuine issues of material fact, the parties implicitly raise an issue about the meaning of the statute's term "partnership." They appear to disagree about what type

of relationship must be represented for partnership by estoppel: a partnership or a less formal but collaborative profit-oriented relationship, such as a joint venture. Their arguments about the nature of the purported relationship between Cay Clubs, Aeder, and the JDI entities urge us to answer whether partnership by estoppel can be found under NRS 87.160(1) when the subject of the actionable representation is a joint venture rather than a partnership.

Joint ventures and partnerships are similar but not identical. *Hook v. Giuricich*, 108 Nev. 29, 31, 823 P.2d 294, 296 (1992). "[A] partnership is an association of two or more persons to carry on as co-owners a business for profit . . . ." NRS 87.060(1). A joint venture is a similar collaboration for profit, but the collaboration is limited to a specific business objective rather than an ongoing business. *Hook*, 108 Nev. at 31, 823 P.2d at 296. Despite the distinction, Nevada caselaw provides that the principles of partnership law apply to joint ventures. *Radaker v. Scott*, 109 Nev. 653, 658, 855 P.2d 1037, 1040 (1993). Other jurisdictions have concluded the same, and they have applied the partnership-by-estoppel doctrine to impose liability for the representation of a joint venture. *See, e.g.*, *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 56 (1st Cir. 2002) (indicating that partnership by estoppel applies to joint ventures); *John's, Inc. v. Island Garden Ctr. of Nassau, Inc.*, 269 N.Y.S.2d 231, 236 (Dist. Ct. 1966) (concluding that the rules that apply to partnerships, including partnership by estoppel, apply to joint ventures), *aff'd sub nom. C.J. Zonneveld & Sons, Inc. v. Island Garden Ctr., Inc.*, 280 N.Y.S.2d 34, 34 (App. Term 1967); *Allan Constr. Co. v. Parker Bros. & Co.*, 535 S.W.2d 751, 754-55 (Tex. Civ. App. 1976) (applying partnership by estoppel to conclude that a party was liable as a joint venturer). Likewise,

we conclude that the partnership-by-estoppel doctrine, as defined by NRS 87.160(1), applies where the subject of the representation is a joint venture rather than a partnership.

### The term "consents" in NRS 87.160(1)

Partnership by estoppel may arise where a party, "by words spoken or written or by conduct, represents himself or herself, or consents to another representing him or her to any one, as a partner . . . with one or more persons not actual partners." NRS 87.160(1). As to the term "consents," the parties disagree over the extent to which NRS 87.160(1) requires a manifestation of consent. Whereas Aeder and the JDI entities argue as though the statute requires an explicit communication of consent, the purchasers argue that consent may be found where it can be implied from one's conduct.

Consent may be "express[ed]" by words or "implied" by conduct. *Black's Law Dictionary* 323 (8th ed. 2004). Also, the comment to the UPA rule on which NRS 87.160(1) is based explains consent by directing the reader to caselaw which provides that consent may be implied when the facts make the implied conclusion reasonable. Unif. P'ship Act § 16, 6 U.L.A. 661-62 cmt. (1914) (explaining consent by citing to *Morgan v. Farrel*, 20 A. 614, 615-16 (1890) (indicating that consent may be reasonably implied)); *see also Anderson Hay & Grain Co. v. Dunn*, 467 P.2d 5, 7 (N.M. 1970) (concluding that the consent to being represented as a partner may be implied by conduct if the conduct would lead a reasonable person to that conclusion). Thus, we conclude that consent under NRS 87.160(1) may be manifested either by one's express words or one's conduct from which consent can be reasonably implied.

*The phrase "given credit" in NRS 87.160(1)*

The parties disagree on the type of credit that must be extended for partnership by estoppel. The purchasers contend that NRS 87.160(1)'s phrase "given credit" means a claimant's belief in and detrimental reliance on the representation of a partnership's existence. Aeder and the JDI entities respond that this statutory language conditions partnership liability on the extension of financial credit to the purported partnership.

"Credit" has been defined as the "[b]elief" or "trust" in another person, the "availability of funds . . . under a letter of credit," or the "ability to borrow money." *Black's Law Dictionary* 396 (8th ed. 2004). Hence, because it lends itself to more than one reasonable interpretation, the term "credit" presents an ambiguity that invites us to refer to other authorities to resolve the statute's meaning. *See State Farm*, 116 Nev. at 294, 995 P.2d at 485. Unfortunately, NRS 87.160(1) lacks legislative history that addresses the meaning of "given credit." However, because the Legislature directed this court to construe NRS 87.160(1) in uniformity with other jurisdictions that have adopted the UPA, we look to other jurisdictions for guidance. *See* NRS 87.040(4).

Aeder and the JDI entities direct this court to one salient authority, *Bertin Steel Processing, Inc. v. U.S. Steel Corp.*, No. 1:02 CV 1669, 2005 WL 2205332, at *14 (N.D. Ohio Sept. 6, 2005), wherein the phrase "given credit" was limited to financial credit.[4] But numerous

---

[4]Aeder and the JDI entities also rely on the following authorities and unpublished decisions for their contention that the phrase "given credit" is limited to the extension of financial credit, but they overlook that none of these authorities expressly articulates such a limited definition of

*continued on next page . . .*

jurisdictions have either rejected that limited reading of the phrase or have read "given credit" to mean giving credence to a representation of a partnership by detrimentally relying on the representation. *See, e.g.,* *Pinnacle Port Cmty. Ass'n v. Orenstein,* 872 F.2d 1536, 1540-41 (11th Cir. 1989) (providing that Florida courts have not limited partnership by estoppel to matters involving financial credit and construing credit to mean detrimental reliance on the purported partnership); *Glazer v. Brookhouse,* 471 F. Supp. 2d 945, 948-49 (E.D. Wis. 2007) (concluding that the Wisconsin Supreme Court has not limited the phrase "given credit" to financial credit and that the phrase means to detrimentally rely on the representation of a partnership); *see also McElwee v. Wharton,* 19 F. Supp. 2d 766, 772 (W.D. Mich. 1998) (construing Michigan's partnership-by-estoppel statute to apply to a party who detrimentally relies on a representation of a partnership by contracting with the purported

---

*. . . continued*

the phrase: *Milano ex rel. Milano v. Freed,* 64 F.3d 91, 98 (2d Cir. 1995) (without defining the phrase "given credit," concluding that there was an absence of evidence to show that the plaintiffs relied on a representation of a partnership); *Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1169 (2d Cir. 1993) (without defining the phrase "given credit," concluding that claimant failed to assert a viable partnership-by-estoppel argument for failure to assert that any credit was given); *Barmes v. IRS,* 116 F. Supp. 2d 1007, 1014 n.4 (S.D. Ind. 2000) (without defining the phrase "given credit," concluding that credit was not given); *Davies v. Gen. Tours, Inc.,* No. CV 970057425S, 1999 WL 712917, at *2 (Conn. Super. Ct. Aug. 31, 1999) (not defining "given credit" but determining that the facts did not show "any sort of credit" was given), *aff'd,* 774 A.2d 1063, 1072-73, 1078 (Conn. App. Ct. 2001); *Howick v. Lakewood Vill. Ltd. P'ship,* No. 10-08-20, 2009 WL 1110829, at *8 (Ohio Ct. App. Apr. 27, 2009) (not defining "given credit" but using a definition of credit to which the parties agreed).

partnership); *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 105-06 (S.D.N.Y. 1997) (acknowledging that federal and New York courts have interpreted "given credit" to mean financial credit or a reliance on the existence of a represented partnership); *Sitchenko v. DiResta*, 512 F. Supp. 758, 761-62 (E.D.N.Y. 1981) (holding that one gave credit to a purported partnership by entering into an employment agreement in reliance on the representation of a partnership). These authorities indicate that the phrase "given credit" is one that is reasonably understood as not being limited to the extension of financial credit.

In arguing that the phrase "given credit" only concerns extension of financial credit, Aeder and the JDI entities emphasize that the revised 1997 version of the UPA replaced the phrase "given credit" with "enter[ ] into a transaction." Unif. P'ship Act § 308(a), 6 U.L.A. 128 (1997). They contend that this revision *expands* the UPA's partnership-by-estoppel language to matters that do not involve financial credit, such that NRS 87.160(1)—which was based on the pre-1997 version of the UPA—must be construed to apply only to matters that involve financial credit. However, a comment to this revision suggests otherwise, as it explains that the revised language *"continues* the basic principles of partnership by estoppel from UPA Section 16." Unif. P'ship Act § 308(a), 6 U.L.A. 128, 129 cmt. (1997) (emphasis added). Thus, the revision does not expand but, instead, clarifies and continues the partnership-by-estoppel principles that the drafters attempted to encapsulate. *See id.* Additionally, it provides indicia of the drafters' understanding that the partnership-by-estoppel doctrine applies to matters beyond those that implicate the extension of financial credit. *See id.*

To adopt Aeder's and the JDI entities' construction of the phrase "given credit" would severely limit who could utilize the

SUPREME COURT
OF
NEVADA

(O) 1947A

14

partnership-by-estoppel doctrine. Under their interpretation, NRS 87.160(1) would only benefit claimants with the financial resources and expertise to extend financial credit to a purported partnership. There are claimants beyond this cohort that face the risk of incurring an actionable injury because of the representation of a purported partnership. *See, e.g., Sitchenko*, 512 F. Supp. at 760-62. Thus, we do not read NRS 87.160(1)'s phrase "given credit" to only mean the extension of financial credit. Rather, as it appears in NRS 87.160(1), "given credit" means giving credence to the representation of a partnership by detrimentally relying on the representation, which may include, but is not limited to, the act of extending financial credit to the purported partnership or venture.

However, although there need not be an extension of credit for the partnership-by-estoppel doctrine to apply, there must nonetheless be a transaction between the claimants and the purported partnership. This transaction requirement is illustrated by the 1997 version of the UPA, which replaces "given credit" with "enter[ ] into a transaction." As stated above, the revised language of the 1997 version of the UPA merely clarifies and continues the partnership-by-estoppel principles encapsulated in previous versions of the UPA, on which NRS 87.160(1) was based. *See* Unif. P'ship Act § 308(a), 6 U.L.A. 128, 129 cmt. (1997). Thus, NRS 87.160(1) requires a transaction between the claimants and the purported partnership for the claimants to have "given credit" under the statute. The existence of or nature of any transaction between the purchasers and the purported partnership is a factual question to be resolved by the court below.

*The reasonable reliance requirement*

We now turn to a prerequisite for partnership by estoppel that is not explicitly stated in NRS 87.160(1). Generally, jurisdictions provide

that the partnership-by-estoppel doctrine conditions liability on the plaintiff having reasonably relied on the representation of partnership, which often involves an exercise of due diligence to ascertain the facts. *See, e.g., Bragg v. Johnson*, 229 A.2d 497, 498 (Del. Super. Ct. 1966) (providing that plaintiff must have reasonably believed in the existence of a partnership to prevail on a partnership-by-estoppel claim); *Anfenson v. Banks*, 163 N.W. 608, 620-21 (Iowa 1917) (collecting cases where the common law definition of partnership by estoppel included the requirement of an exercise of due diligence to know the truth regarding the existence of a partnership); *Gamble Robinson Co. v. Carousel Props.*, 688 P.2d 283, 288 (Mont. 1984) (explaining Montana's partnership-by-estoppel statute—which resembles NRS 87.160(1)—and concluding that it requires one to have reasonably relied on the representation of a partnership by making a reasonable inquiry about the representation's veracity); *Wis. Tel. Co. v. Lehmann*, 80 N.W.2d 267, 270 (Wis. 1957) (indicating that the reliance on the representation of a partnership must be reasonable for partnership by estoppel). Because Nevada caselaw lacks a significant discussion of the partnership-by-estoppel doctrine, it has not addressed the reasonable reliance requirement that other jurisdictions uphold.

However, the Legislature has provided that the law of estoppel applies to NRS 87.160(1). NRS 87.040(2). Moreover, in a similar matter, we extended equitable estoppel's reasonable reliance requirement to a party's claim that the apparent authority of an agent was the basis for forming a contract. *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 113 Nev. 346, 352, 934 P.2d 257, 261 (1997). Likewise, we conclude that the reasonable reliance requirement, including the performance of due diligence to learn the veracity of the representation of partnership, that

 

other jurisdictions impose for partnership by estoppel is one that NRS 87.160(1) includes as well. As indicated by its language, NRS 87.160(1) seeks to afford relief to those who incur an injury upon believing and detrimentally relying on the representation of a partnership. Without the reasonable reliance requirement, the partnership-by-estoppel doctrine would lack an objective limitation to prevent it from being abused by people who knew, or reasonably should have known, that the representation of the partnership or joint venture was untrue. This factual determination remains to be considered on remand.

*NRS 87.160(1)'s applicability to claims that do not sound in contract*

The parties disagree about whether partnership-by-estoppel liability under NRS 87.160(1) may be imposed where the claim for which that theory of liability is pleaded does not sound in contract. Aeder and the JDI entities argue that NRS 87.160(1) imposes partnership liability only for causes of action that sound in contract. The purchasers respond that the statute imposes liability for any cause of action that conditions liability on the reliance upon the representation of a partnership.

In a partnership, the partners are jointly and severally liable for injuries caused by a partner's actions within the ordinary course of the partnership's business or with the authority of other partners. NRS 87.130; NRS 87.150(1). This liability extends to tortious acts such as fraud. *See Radaker v. Scott*, 109 Nev. 653, 658, 660, 855 P.2d 1037, 1040, 1041 (1993) (providing that in the context of a joint venture—governed by the laws of partnerships—a joint venturer is liable for another joint venturer's fraudulent act that is completed within the scope of the joint venture's enterprise). We recognize that even though the partnership-by-estoppel doctrine provides for the same liability that would arise from a

partnership, which would include tort liability, other jurisdictions have concluded that the doctrine only imposes liability under claims that sound in contract. *See, e.g., Roethke v. Sanger*, 68 S.W.3d 352, 360 (Ky. 2001) (providing in dicta that its partnership-by-estoppel statute only provides for contractual liability); *Pruitt v. Fetty*, 134 S.E.2d 713, 717 (W. Va. 1964) (concluding the same).

Generally, the premise relied on for concluding that the partnership-by-estoppel doctrine is limited to contract claims is that the doctrine's reliance element exists in contractual matters, in which a party relies on the existence of a partnership in entering into a contract, but does not exist in tortious matters, in which a victim often does not rely on a partnership's existence in sustaining an injury. *See Pruitt*, 134 S.E.2d at 717; *see also* Thomas Erickson, Recent Decision, 55 Mich. L. Rev. 1190, 1191 (1957) (noting that the reliance element for partnership by estoppel is often present in contract-based causes of action). This premise is poor, as reliance on a partnership or joint venture's existence may arise in claims that do not sound in contract. *See* Erickson, *supra*, at 1191 (concluding that partnership by estoppel applies to "tort actions involving reliance"). For example, "[i]n cases of fraud or misrepresentation, where one is induced to buy from those misrepresenting, . . . relying on their holding out of a partnership, he [or she] may sue them as partners and hold them estoped to deny the relation." *Id.*; *see also Frye v. Anderson*, 80 N.W.2d 593, 603 (Minn. 1957) (determining that the partnership-by-estoppel doctrine is applicable to tort-based causes of action).

Accordingly, we conclude that the application of NRS 87.160(1) does not turn on whether the cause of action sounds in contract. Instead, it turns on whether the claim implicates the reliance element that is required for partnership by estoppel. Thus, NRS 87.160(1) applies to

the purchasers' claims that are based on their reliance upon the representations of a partnership or a joint venture and are not limited to contract claims.

*A review of our determinations about NRS 87.160(1)'s meaning*

Thus, to review, NRS 87.160(1)—Nevada's partnership-by-estoppel statute—imposes partnership liability on a party where, with the party's "consent[ ]," there is a representation that the party is a "partner," and another party has "given credit" to the purported "partnership." Partnership by estoppel may arise under this statute where the subject of the representation is a joint venture. Consent to the representation may be reasonably implied from one's conduct. The phrase "given credit" does not limit the statute's application to matters where financial credit is extended to the purported partnership or joint venture; rather, the phrase concerns the credence that is given to the representation when one detrimentally relies on it in conducting a transaction with the purported partnership, which may but is not required to include the extension of financial credit. The claimant who seeks to prevail on a partnership-by-estoppel claim must have reasonably relied on the representation of a partnership or joint venture, which entails the effort to learn the veracity of the representation. Finally, NRS 87.160(1) may impose partnership liability with respect to claims that implicate the reliance element that is required for partnership by estoppel, and such claims are not limited to those sounding in contract.

*The summary judgment in favor of Aeder and the JDI entities*

Having clarified NRS 87.160(1)'s meaning, we now consider whether genuine issues of material fact remained with respect to Aeder's and the JDI entities' liability under NRS 87.160(1).

The purchasers contend that Aeder and the JDI entities did not show the absence of genuine issues of material fact with respect to their liability under NRS 87.160(1) when they moved for summary judgment. The purchasers assert that their evidence revealed that they relied on and gave credence to a purported partnership between Cay Clubs, Aeder, and the JDI entities when purchasing condominiums and engaging in related transactions on their reasonable belief that the purported partnership provided the financial strength to create the advertised luxury resort. Further, they contend that the evidence showed that Aeder and the JDI entities consented to the representation of a partnership with Cay Clubs. Last, they argue that the district court placed undue emphasis on the word "strategic" in concluding that the marketing materials' use of the phrase "strategic partnership" was insufficient for establishing partnership-by-estoppel liability.

Aeder and the JDI entities respond that the parol evidence rule barred the purchasers from relying on their evidence of a purported partnership because the purchase agreements contained an integration clause and identified Flamingo Palms Villas, and not a partnership, as the seller of the Las Vegas Cay Club condominiums. They also argue that the purchasers did not give any credit to the purported partnership between Cay Clubs, Aeder, and the JDI entities because the purchasers' transactions and agreements were with Flamingo Palms Villas, which was not represented as being in a partnership with anyone.

In determining whether the district court erred in granting summary judgment, we resolve whether genuine issues of material fact remained with respect to partnership by estoppel under NRS 87.160(1), such that "a rational trier of fact could return a verdict for the nonmoving party." *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031

Supreme Court
of
Nevada

(O) 1947A

20

(2005). The party who moves for summary judgment has the burden of showing the absence of genuine issues of material fact. *Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 602, 172 P.3d 131, 134 (2007). If that party lacks the burden of persuasion at trial, he or she may satisfy this burden by pointing to "'an absence of evidence to support the nonmoving party's case.'" *Id.* at 602-03, 172 P.3d at 134 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Generally, to defeat the motion for summary judgment, the nonmoving party must submit admissible evidence to show a genuine issue of material fact. *Id.* at 603, 172 P.3d at 134. But when a party does not object to the inadmissibility of evidence below, the issue is waived and otherwise inadmissible evidence can be considered. *See Whalen v. State*, 100 Nev. 192, 195-96, 679 P.2d 248, 250 (1984) (considering otherwise inadmissible evidence with respect to a summary judgment because the issue of admissibility was waived for lack of an objection).

### *The parol evidence rule and the purchasers' evidence*

Aeder and the JDI entities argue that no admissible evidence was proffered to contest their motion for summary judgment because the evidence on which the purchasers relied was barred by the parol evidence rule. The parol evidence rule precludes the admission of extrinsic "evidence that would change the contract terms when the terms of a written agreement are clear, definite, and unambiguous." *Ringle v. Bruton*, 120 Nev. 82, 91, 86 P.3d 1032, 1037 (2004). It applies only when the contracting parties agree that the written agreement is the "final statement of the agreement." 11 Richard A. Lord, *Williston on Contracts* § 33:14 (4th ed. 2012). The rule does *not* bar extrinsic evidence that is offered to explain matters on which the contract is *silent* "so long as the

evidence does not contradict the [agreement's] terms." *Ringle*, 120 Nev. at 91, 86 P.3d at 1037. For example, in a matter regarding partnership by estoppel, the Minnesota Supreme Court held that the parol evidence rule did not bar extrinsic evidence to help resolve uncertainties about a partnership's existence when the contract did not address a partnership or preclude its possibility. *Blumberg v. Palm*, 56 N.W.2d 412, 415-16 (Minn. 1953).

Aeder and the JDI entities rely on the following language of a purchase agreement in asserting that the parol evidence rule barred the purchasers' evidence for partnership by estoppel:

> This Agreement, such documents and all addenda and exhibits attached hereto reflect the entire and exclusive agreement of the Parties regarding the construction of the Residence, the purchase and sale of the Property, representations, warranties and duties of Seller related to the Property and the materials and workmanship used in construction of the Property. No salesperson, agent or employee of Seller has the authority to make any representations that contradict or alter any terms of this Agreement . . . . Except as expressly set forth in this Agreement and such documents, Buyer has not relied upon any representations . . . with respect to any aspect of the Property. This Agreement is intended by Buyer and Seller as the final expression and the complete and exclusive statement of their agreement . . . , and any prior or contemporaneous oral or written agreements or understandings which may contradict, explain or supplement these terms are hereby superseded . . . .

This language suggests the intent to integrate the purchase agreement. Although the language provides that the purchasers did not rely on any representations about the "Property," this language on which Aeder and

the JDI entities rely for their parol evidence argument was silent about a partnership. Thus, the parol evidence rule did not prohibit evidence regarding the representations of a partnership or a joint venture.

*The genuine issues of material fact*

Although some of the purchasers' evidence may have been inadmissible if objected to, Aeder and the JDI entities made no objections about the admissibility of the evidence beyond their assertion of the parol evidence rule. Thus, all of the evidence before the district court can be considered for determining whether genuine issues of material fact remained. *See Whalen*, 100 Nev. at 195-96, 679 P.2d at 250.

When moving for summary judgment, Aeder and the JDI entities averred that there was an *absence* of evidence for the purchasers' partnership-by-estoppel claim. At that time, the purchasers had not yet proffered evidence of actual representations of a partnership or joint venture. As a result, Aeder and the JDI entities satisfied their initial burden of showing the absence of genuine issues of material fact. But in contesting the motion, the purchasers submitted additional evidence that demonstrated genuine issues of material fact.

The purchasers submitted evidence of Cay Clubs' marketing materials. These materials included Cay Clubs' website, which stated that Cay Clubs was "a partnership of . . . professionals" and that its "strategic partner[s]" included the JDI entities. The marketing materials described the relationship with the JDI entities as a "partnership in excellence," identified the JDI entities as part of Cay Clubs' development team, and often used JDI Realty's logo alongside Cay Clubs' logo. Although the district court determined that a single use of the term "strategic" undermined the partnership-by-estoppel theory of liability, the

multiple representations of a profit-oriented relationship between Cay Clubs and the JDI entities created a genuine issue of material fact as to whether these marketing materials represented a partnership, or at least a joint venture, between them.

The purchasers' evidence also established a genuine issue of material fact about whether JDI consented to the representations of a partnership or joint venture. In a deposition, Aeder stated that he reviewed Cay Clubs' marketing materials and did not doubt, but could not recall, that a reference was made to the JDI entities. Aeder also declared that he was the manager for the JDI entities. Hence, there was evidence of Aeder's potential knowledge of any actionable representations. There was also evidence which indicated that Aeder, through his LLCs, had supported Cay Clubs' development of other properties in the past and with respect to Las Vegas Cay Club. Therefore, there was evidence of a working relationship between Cay Clubs and Aeder and thus evidence of the same between Cay Clubs and Aeder's JDI entities. Accordingly, the totality of the evidence, especially the evidence of Aeder's knowledge of the marketing materials and his history of using his LLCs to extend support to Cay Clubs, indicated a genuine issue of material fact about whether Aeder, on behalf of the JDI entities, permitted Cay Clubs to make the actionable representations in the marketing materials.

With respect to the credit given to any actionable representations, multiple purchasers submitted affidavits wherein they stated that they relied on the representations of a partnership when purchasing their condominiums and engaging in related transactions with Cay Clubs. In those affidavits, they stated their beliefs that the partnership with the JDI entities provided the financial strength and

experience to manage their money and perform the promised improvements to their property. Aeder and the JDI entities contend that the purchasers did not give any credit to the purported partnership between Cay Clubs and the JDI entities because the purchasers only transacted with Flamingo Palms Villas. However, the purchasers submitted to the district court an auditor's report that indicated that Cay Clubs appeared to be made of various LLCs that were created for each of its properties. Moreover, the district court had before it a deed of trust that related to a Las Vegas Cay Club property that was signed by the Flamingo Palms Villas' manager, who was identified in other documents as forming and being involved in other Cay Clubs properties. Thus, the evidence indicates that there remains a genuine issue of material fact as to whether credit was given to the purported partnership when the purchasers transacted with Flamingo Palms Villas, an entity that appeared to be one of many LLCs that made up Cay Clubs, and therefore whether the JDI entities may be held liable as Cay Club partners. The various parties' relationships and representations, if any, must be determined on remand.

As to the reasonable reliance requirement for partnership by estoppel, the evidence indicated a genuine issue of material fact about the purchasers' reasonable reliance on the representations of the relationship between Cay Clubs and the JDI entities. The marketing materials repeatedly emphasized a profit-oriented relationship between the two. Moreover, the affidavits of multiple purchasers provided that they attended sales and marketing presentations where such representations were made and that their belief in such representations was reinforced when reviewing marketing materials and Cay Clubs' website. Hence, the

SUPREME COURT
OF
NEVADA

(O) 1947A

evidence established the indicia of an effort to follow up on the representations of a partnership or joint venture between the JDI entities and Cay Club.

Accordingly, the district court erred in granting summary judgment to the JDI entities with respect to their liability under NRS 87.160(1). Under this statute, the JDI entities may be liable as partners for the wrongdoings of others that are raised in the purchasers' claims that implicate their purported reasonable reliance on the representations of a partnership or joint venture between Cay Clubs and the JDI entities.[5] However, as to Aeder's liability under partnership by estoppel, the purchasers' briefing and analysis have only directed this court to evidence

_____

[5]In reaching our determinations above regarding the genuine issues of material fact, we acknowledge that although multiple purchasers submitted affidavits that indicated their reasonable reliance on the representations of the profit-oriented relationship between Cay Clubs and the JDI entities, not all of the purchasers submitted such affidavits. We also acknowledge that the JDI entities and Aeder assert the following argument, which lacks merit: only three purchasers could show reasonable reliance because only three purchasers entered into their purchase agreements before Flamingo Palms Villas engaged in the partnership-type activity of a loan transaction with another JDI entity. This argument overlooks that NRS 87.160(1) conditions liability on the claimant's reasonable reliance on the *representation*—not on the existence and activity—of a partnership or joint venture. Moreover, the record indicates that the purchasers were primarily similarly situated plaintiffs. Given these unique circumstances, the evidence showed that genuine issues of material fact remained as to the JDI entities' partnership-by-estoppel liability. Thus, the district court's determination that the JDI entities lacked liability under NRS 87.160(1) must be reversed. To the extent that the JDI entities want to dispute their liability as to each purchaser on a plaintiff-by-plaintiff basis, we leave that matter to the parties and the district court on remand.

of partnership by estoppel with respect to the JDI entities. They have not analyzed or directed this court to evidence of representations of a partnership or joint venture with Aeder. Therefore, absent an analysis of such evidence, we conclude that the district court did not err in granting summary judgment in Aeder's favor regarding his liability under NRS 87.160(1).

## CONCLUSION

Because of the genuine issues of material fact above, the district court erred in granting summary judgment to the JDI entities with regard to their liability under the partnership-by-estoppel doctrine that NRS 87.160(1) codifies. We conclude that partnership by estoppel may be found under NRS 87.160(1) where the subject of the actionable representation is a partnership or a joint venture, that the consent required for partnership by estoppel can be express or implied from one's conduct, that the statute's phrase "given credit" means giving credence to the representation by detrimentally relying on it to engage in a transaction with the purported partnership, and that the claimant who seeks to prevail on the partnership-by-estoppel claim must have reasonably relied on the representation of partnership or joint venture. Moreover, we conclude that NRS 87.160(1) may impose partnership liability with respect to claims that implicate the reliance element that is required for partnership by estoppel—such claims are not limited to causes of action that sound in contract.

Therefore, we reverse the order granting summary judgment in favor of the JDI entities with respect to their liability under NRS 87.160(1) and remand this matter to the district court for further proceedings that are consistent with this opinion. In addition, we reverse

SUPREME COURT
OF
NEVADA

(O) 1947A

the award of costs that was predicated on the grant of summary judgment to the JDI entities.[6]

_____, J.
Saitta

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____

[6]We have considered the remaining contentions on appeal and conclude that they lack merit.